**STATE of Minnesota, Respondent,**

v.

**Marvin William WALL, Appellant.**

**No. C6–83–941.**

Supreme Court of Minnesota.

Jan. 20, 1984.

---

C. Paul Jones, State Public Defender, by Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas J. Reif, Douglas County Atty., Alexandria, for respondent.

AMDAHL, Chief Justice.

This is a sentencing appeal in which the defendant contends that the trial court erred in departing durationally from the presumptive sentence. We agree and reduce defendant's sentence to the maximum sentence that could have been imposed without departure, in this case 121 months.

Defendant was charged by indictment with first-degree murder in the strangling death of his wife. He was permitted to plead guilty to the lesser included offense of second-degree felony murder, Minn.Stat. § 609.19(2) (1982). The presumptive sentence for the offense (a severity level X offense) by a person with defendant's criminal history score (zero) was an executed term of 116 (111–121) months at the time of sentencing.[1] Defense counsel moved for both a dispositional and a downward durational departure (probation and a shorter sentence), and the state moved for an upward durational departure (double the presumptive sentence length). The trial court sentenced defendant to an executed term of 180 months in prison (approximately 1½ times the presumptive sentence length). On appeal defendant contends that there were no grounds for imposing a longer term and that the court should have placed him on probation and sentenced him to a shorter term.

Defendant is a 58-year-old farmer from Miltona who has been suffering from para-

---

1. The Sentencing Guidelines Commission, effective November 1, 1983, has reclassified felony murder as a severity level IX offense, which has the effect of changing the presumptive sentences for felony murder so that they are equivalent to those for third-degree depraved mind murder. The Commission, on the other hand, slightly increased the presumptive sentences for offenders with a criminal history score of zero who commit severity level IX and X offenses. The presumptive sentence for a severity level IX offense by a person with a criminal history score of zero is now 105 (102–108) months in prison. Whether defendant should benefit from any retroactive application of the changes is not an issue on appeal.

noia and schizophrenia since 1961, when he was first hospitalized. His condition has progressively deteriorated since 1971 because of alcoholism. The testimony of the children, who are grown, makes it clear that defendant focused much of his paranoia on his wife, abusing her both psychologically and physically. The psychological abuse included threats to kill and the physical abuse took the form of serious beatings. In 1972 defendant was charged with aggravated assault after he severely beat the victim (an incident that included an attempt to strangle her) but that charge was dismissed in 1975 after defendant was treated under a civil commitment at St. Peter.

Defendant was usually less physically aggressive for a period of time after being released from the hospital, but then he would stop taking his medication and he would again become more physically aggressive. It appears that the refusal of schizophrenics to take their medication is common, almost a symptom of the disease. Just as defendant was paranoid about his wife, on whom he was dependent, he also was paranoid about the medicine, which he needed to function.

The killing occurred early on the morning of August 26, 1982. Within a week to 10 days before the killing, defendant was expressing fear that his wife was poisoning him. He felt that the medicine she wanted him to take was poison and refused to take it. He rejected suggestions from the children that he return to the hospital for a short time. He was also drinking.

It is not clear from the record what events immediately preceded the killing. All that is clear is that defendant strangled the victim early in the morning while she was in bed and that he then drove to his daughter's house 4½ miles away, arriving there around 4:20 a.m. Questioned at the sheriff's office later, he said that he went to bed at 6:30 or 7 p.m. the night before, that his wife went to bed after the news, and that at about 4 a.m. he got up with an upset stomach. He said that he went to the kitchen, had a beer, then went back and choked her.

Defendant was charged by indictment with first-degree murder but was permitted to plead guilty to second-degree felony murder. He stated at the hearing on his plea that he had no recollection of the strangling. He stated that he wanted to plead guilty because he felt that a jury would reject his defense of mental illness and might well convict him of first-degree murder.

The prosecutor recommended that the court double the presumptive sentence duration of 116 (111–121) months because of the long history of abuse, the extreme danger to the public, and the defendant's unamenability to probation.

Defense counsel sought a dispositional departure and a downward durational departure, pointing to defendant's reduced capacity for judgment, which is a listed mitigating factor. Defense counsel argued that it would be improper to rely on defendant's refusal to take his medication, argued that his personal history if anything supported mitigation rather than aggravation of sentence, and argued that defendant was not a danger to the community at large, particularly if he was committed to St. Peter and given proper treatment with appropriate safeguards.

The trial court refused to depart downward, stating "in passing" that he wondered if defendant's refusal to take medicine was not similar to the voluntary use of intoxicants, which the Guidelines say does not fall within the purview of the mitigating factor of lack of substantial capacity. He said that the real question in his mind was whether there were grounds for an upward durational departure. He said that the fact that defendant had treated the victim with particular cruelty during her entire married life could not be considered, that he could consider only acts committed during the commission of the charged offense. He then said:

> However, there's another factor that the court has considered, and that should be and can be considered in this case for

upwards durational departure, and that is that the victim was particularly vulnerable due to age, infirmity or reduced physical capacity which was known or should have been known by the defendant.

Now, * * * the cases that cite this factor as a basis for departure support the conclusion that it [is] not the mere existence of reduced physical capacity, but reduced physical capacity which contributes to the commission of the crime that is significant. Although that particular factor does not identify sleep, in the instant case, the victim's vulnerability to death by strangling was probably enhanced because she was sleeping. If then the vulnerability factor is intended to justify greater punishment where the defendant has preyed upon the reduced physical capacity of the victim, it would follow that reduced physical capacity should be construed to encompass the instance where the victim's inability to defend herself is caused by sleep.

In my opinion, that factor alone is of a substantial and compelling nature as to justify departure and demonstrate why the sentence that I'm about to pronounce is more appropriate, reasonable and equitable than the presumptive sentence of the guidelines, and I might point out that the court has considered, although it does not feel that it's a necessary factor, in view of the finding of the vulnerability, but the amenability is also very much of a concern to this court.

The court then proceeded to sentence defendant to 180 months or 15 years in prison.

It is clear from the record that defendant, "because of * * * mental impairment, lacked substantial capacity for judgment when the offense was committed." Minnesota Sentencing Guidelines and Commentary, II.D.2.a.(3) (1982). His refusal to take his medication did not change this because, as the medical testimony in the record

makes clear, the refusal of a schizophrenic to take his medication is itself a result of the disease.

The fact that a mitigating factor was clearly present did not obligate the court to place defendant on probation or impose a shorter term than the presumptive term. We have indicated in numerous cases that we generally will not interfere with a trial court's refusal to depart downward (or upward). *See, e.g., State v. Kindem*, 313 N.W.2d 6 (Minn.1981).

The court was correct in concluding that the long history of defendant's abusing the victim could not be considered a ground for an upward durational departure. It would be particularly inappropriate to rely on that fact in a case where the reason for the long history of abuse was mental illness.

Similarly, defendant's dangerousness and any unamenability to probation are perpetrator-related factors that would bear only on a dispositional departure, not on a durational departure or one with respect to consecutive service. *State v. Heywood*, 338 N.W.2d 243, 244 (Minn.1983); *State v. Gardner*, 328 N.W.2d 159, 162 (Minn.1983).

It is not clear whether the victim was strangled while she was asleep. The trial court inferred that from the fact that the victim was in bed at the time defendant strangled her and from defendant's statement that after he had a beer in the kitchen he went back to the bedroom and strangled her.[2] In any event, even if the victim was asleep, we do not believe that the durational departure was proper in this case, given the fact that defendant lacked substantial capacity for judgment. While the presence of the mitigating factor did not take away the court's discretion to impose the presumptive sentence, the factor could not properly be ignored in this case in determining whether or not defendant's conduct was particularly deserving of punishment.

**2.** In *State v. Schmit*, 329 N.W.2d 56, 58 n. 1 (Minn.1983), we declined to decide whether a homicide victim was particularly vulnerable in the sense that she was asleep at the time of the killing.

Taking the factor into account in that regard, we conclude that aggravating circumstances were not present and that the maximum sentence that the trial court could have imposed was 121 months in prison.

Affirmed as modified.