*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0681**

State of Minnesota,
Appellant,

vs.

Adam Wallace Jaunich,
Respondent.

**Filed September 19, 2016
Reversed and remanded
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CR-15-1072

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, John Patrick Monnens, Assistant County Attorney, Minneapolis, Minnesota (for appellant)

Thomas M. Beito, Minneapolis, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Smith, John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

In this sentencing appeal, the state challenges the district court's imposition of a 365-day stayed sentence for respondent's second-degree burglary conviction, which constitutes a departure from the presumptive sentence of a stayed 18-month term. Because we conclude that the district court abused its discretion, we reverse and remand for imposition of a presumptive sentence.

**FACTS**

Respondent Adam Wallace Jaunich was in a romantic relationship with D.M. for approximately three years until 2013. After D.M. ended their relationship, Jaunich began harassing and stalking her. According to D.M., Jaunich broke into her home on numerous occasions, during which he vandalized and stole her belongings. Jaunich admits that he had keys to her house and that he continued to stop by D.M.'s home until she changed the locks. Between 2013 and early 2015, he also sent her numerous e-mails, texted her, and called her until she blocked his number. D.M. also stated that Jaunich followed her on more than one occasion by car, sometimes driving at high speeds closely behind, in front, or next to her car.

On January 10, 2015, D.M. unexpectedly saw Jaunich during a visit to a mutual friend's house. When she returned home, she saw Jaunich pull into her driveway behind her and then leave. Afraid, she drove away as well. Upon her return, D.M. observed footprints in the snow and a hat on her property that was similar to the one she saw Jaunich wearing earlier that day. Inside, she found that her home had been ransacked,

there was blood on the kitchen table and floor, one of her bras had been torn in half, and several items were missing. Shortly after the incident, Jaunich sent D.M. several text messages, including "Please don't press charges;" "I will return your stuff and give you whatever money you need;" "Please don't press charges, I will give you $1K. is that enough. To make this go away;" and "It sucks . . . I made such a bad decision." When police questioned Jaunich, they noted a fresh 1/4-inch cut on his hand near his wrist. Inside the trunk of his vehicle, officers found a shotgun and shotgun shells.

The state charged Jaunich with one count of felony second-degree burglary in violation of Minn. Stat. § 609.582, subd. 2(a)(1) (2014). The district court ordered a pre-plea investigation report that recommended the presumptive sentence for felony second-degree burglary—an 18-month stayed term. The report did not recommend a downward departure to a gross-misdemeanor sentence because of the nature of the crime and Jaunich's own admissions that he had previously engaged in similar behavior. The report noted that, if anything, the "on-going psychological impact this offense has had on the victim" should be considered as a potential aggravating factor.

Jaunich entered a straight guilty plea to felony second-degree burglary. The state sought the presumptive 18-month sentence recommended in the pre-plea report. The district court imposed a downward durational departure, justifying its decision on three grounds:

> [O]ne is the fact that your mental illness and your chemical dependency issues had on your behavior. You're still culpable for it, but I think your ability to make smart choices or reasonable choices was limited at the time. And I think in

3

> a situation like this, your amenability to probation can factor
> in to a decision to depart to a gross misdemeanor.

The district court imposed a 365-day stayed gross-misdemeanor sentence subject to multiple conditions and restitution in the amount of $4,353.05. This sentencing appeal follows.

## DECISION

The state challenges the district court's decision to impose a downward durational departure. "The Minnesota Sentencing Guidelines promote uniformity, proportionality, and predictability in sentencing." *State v. Hicks*, 864 N.W.2d 153, 156 (Minn. 2015). A guidelines sentence is presumed to be appropriate, and the district court "must" impose it unless there are "identifiable, substantial, and compelling circumstances" that support a different sentence. Minn. Sent. Guidelines 2.D.1 (2014); *see also State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014) ("[A] sentencing court can exercise its discretion to depart from the guidelines *only if* aggravating or mitigating circumstances are present." (quotation omitted)). Substantial and compelling circumstances exist if the defendant's conduct is "significantly more or less serious" than the conduct typically involved in the commission of the crime in question. *Hicks*, 864 N.W.2d at 157 (quotation omitted). "We review a district court's decision to depart from the presumptive guidelines sentence for an abuse of discretion." *Id.* at 156.

The presumptive punishment for Jaunich's conviction of second-degree burglary is a felony sentence. Minn. Stat. § 609.582, subd. 2(a) (2014) (permitting a sentence of "not more than ten years"). A "felony" is defined as "a crime for which a sentence of

4

imprisonment for more than one year may be imposed." Minn. Stat. § 609.02, subd. 2 (2014). A "gross misdemeanor" is defined as "any crime which is not a felony or misdemeanor." *Id.*, subd. 4 (2014). But the law permits the district court to impose a gross-misdemeanor sentence on a felony offense and provides that, in such an event, "the conviction is deemed to be for a . . . gross misdemeanor." Minn. Stat. § 609.13, subd. 1 (2014). The imposition of a gross-misdemeanor sentence for a felony conviction constitutes a downward durational departure. *State v. Peter*, 825 N.W.2d 126, 130-31 (Minn. App. 2012), *review denied* (Minn. Feb. 27, 2013); *see also State v. Bauerly*, 520 N.W.2d 760, 762 (Minn. App. 1994) (ruling that imposition of a 365-day gross-misdemeanor sentence on a felony theft conviction with a presumptive guidelines sentence of 366 days constituted a downward durational departure), *review denied* (Minn. Oct. 27, 1994).

## I.

The district court justified the downward durational departure for Jaunich's sentence on three grounds: (1) his chemical-dependency issues; (2) mental illness; and (3) amenability to probation. The state argues, and Jaunich concedes, that chemical dependency and amenability to probation are impermissible justifications for a downward durational departure. We agree. It is well-settled law that offender-related factors may support a dispositional departure but may not be used to support a durational departure. *Peter*, 825 N.W.2d at 130; *see also* Minn. Sent. Guidelines 2.D.3.a.(3) (2014) (noting that the voluntary use of intoxicants (drugs or alcohol) does not qualify as a mitigating factor for a departure); *State v. Behl*, 573 N.W.2d 711, 713 (Minn. App. 1998) (stating that a

5

defendant's amenability to probation does not support a durational departure), *review denied* (Minn. Mar. 19, 1998). Only offense-related factors may support a durational departure. *Peter*, 825 N.W.2d at 130. Thus, the district court abused its discretion by imposing a downward durational departure based on chemical dependency and amenability to probation, as they are impermissible offender-related factors.

If the reasons provided by the district court are impermissible, this court may nevertheless affirm a durational departure if the record contains "sufficient evidence . . . to justify departure." *Williams v. State*, 361 N.W.2d 840, 844 (Minn. 1985). But "[i]f the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, the departure will be reversed." *Id.* Thus, we must determine whether mental illness or a separate independent reason in the record supports the departure.

The district court expressed concern that Jaunich's bipolar disorder limited his ability to make smart or reasonable choices at the time of the offense. The sentencing guidelines provide that a district court may depart from a presumptive sentence if "[t]he offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed." Minn. Sent. Guidelines 2.D.3.a(3). The supreme court has interpreted the sentencing guidelines to require that the mental illness be extreme. *State v. McLaughlin*, 725 N.W.2d 703, 716 (Minn. 2007) ("As to mental illness, we have held that in order to constitute a mitigating factor in sentencing, a defendant's impairment must be 'extreme' to the point that it deprives the defendant of control over his actions.").

Jaunich concedes that the district court failed to illustrate the connection "between the mental impairment and the commission of the crime" but maintains that the record nevertheless supports a finding of substantial diminished capacity. But there must be a nexus between the mental illness and the incident that forms the basis of the conviction because the sentencing guidelines require a finding that an offender "lacked substantial capacity for judgment *when the offense was committed*." Minn. Sent. Guidelines 2.D.3.a(3) (emphasis added). Here, no such nexus exists.

Relying on *State v. Wall*, 343 N.W.2d 22 (Minn. 1984), and *State v. Martinson*, 671 N.W.2d 887 (Minn. App. 2003), *review denied* (Minn. Jan. 20, 2004), Jaunich argues that the mere diagnosis of bipolar disorder is sufficient to justify the downward departure because the manifestations of his mental illness were focused exclusively on D.M. But this fact alone is insufficient to form the nexus necessary to prove that the mental illness caused him to lack substantial capacity for judgment on the night of the event.

In *Wall*, the defendant was charged with first-degree murder after he strangled his wife to death. 343 N.W.2d at 23. At his plea hearing, Wall indicated that he had no recollection of the strangling and pleaded guilty to second-degree felony murder because he felt that a jury would reject a defense of mental illness. *Id.* at 24. Wall not only had a nearly 20-year documented history of extreme mental illness that included hospitalization and civil commitment, but he raised the issue of mental illness at his plea hearing. *Id.* Here, Jaunich entered a straight guilty plea to the crime without raising the defense of

mental illness or mentioning how it affected him during the incident. The record contains only a brief description of Jaunich's self-reported symptoms of his mental illness.[1]

In *Martinson*, the defendant's longtime extreme mental illness was chronicled in detail. 671 N.W.2d at 891. Additionally, "[t]he expert psychological evidence [was] uncontroverted that, at all relevant times, Martinson suffered from the psychosis of paranoid schizophrenia." *Id.* at 892. Thus, the district court found that Martinson suffered from a mental illness "before, during, and after the incident, and that his illness impaired him socially and psychologically, both before the act and to the present." *Id.* Here, the district court failed to make such findings. Unlike in *Martinson*, the record before us does not connect Jaunich's general diagnosis to the acts that formed the basis for his conviction; rather, the substantive basis of reported ideations and fixations on D.M. derive from Jaunich's self-reporting, not from a documented medical history.

Because the record does not support a finding that Jaunich lacked substantial capacity for judgment when he committed the offense, the district court abused its discretion by imposing a downward durational departure based upon mental illness.

## II.

As noted in *Williams*, this court may affirm the departure if an independent review of the record supports one. 361 N.W.2d at 844. For several reasons, we conclude that the record before us does not support a downward durational departure. First, Jaunich engaged in a pattern of behavior aimed at harassing D.M. While the case before us

---

[1] Jaunich did note on his guilty-plea petition that he has been diagnosed as bipolar, but he indicated both that he had "not been ill recently" and had been taking his medication.

8

involves events on January 10, 2015, the documented pattern of disturbing behavior toward D.M. illustrates that, particularly in the absence of any asserted mental-illness defense at the guilty-plea stage, Jaunich was not unaware of his actions. Over the course of nearly two years, Jaunich repeatedly called, texted, or otherwise harassed D.M. He broke into her home several times. D.M. reported that Jaunich followed her in his car at high speeds on more than one occasion. These facts indicate that Jaunich was engaged in a pattern of behavior over an extended period of time, which undercuts a theory that he was suffering from the type of extreme mental illness on the night he was arrested that would justify a downward departure.

Second, Jaunich was arrested on June 1, 2015 as a result of violating an order for protection issued against him after his January arrest. On January 14, 2015, the district court advised Jaunich that "no contact means no contact as in as broad a sense as you can imagine. So obviously you can't show up and talk to her, can't text her, can't refer to her or contact her through Facebook or any of the other types of social media that are in existence today." Jaunich violated that order when he sent D.M. a text containing a "shadowed image of a baseball player with a bat and with the message 'hi.'" There is nothing in the sentencing transcript to indicate that the district court considered this violation when it imposed a downward departure.

Third, the pre-plea investigation report found no substantial and compelling reasons to depart from the presumptive guidelines sentence. Instead, the report noted that (1) "there is indication that the current offense is not the first time [Jaunich] has engaged in criminal behavior"; (2) Jaunich had a shotgun and ammunition in his possession on the

9

night of the offense, a fact that the author urged the district court to take very seriously; (3) D.M. has expressed ongoing concern for her safety; (4) Jaunich self-reported a history of stopping mental-health treatment when he feels it no longer necessary; and (5) he has a lengthy history of substance abuse. The report recommended that the district court consider the ongoing psychological impact on D.M. as an aggravating factor during sentencing. At the sentencing hearing, the state joined the recommendations of the pre-plea report. While a district court is not obligated to adopt a guidelines sentence, it is "presumed to be appropriate," and the district court "must" impose it unless there are "identifiable, substantial, and compelling circumstances" that support a different sentence. Minn. Sent. Guidelines 2.D.1. We have not found that such circumstances exist in this case.

Finally, Jaunich was ordered to pay $4,353.05 in restitution because he took some items from D.M.'s home and destroyed others. The state noted during sentencing that the initial request for restitution exceeded $5,000 but was lowered to account for some of D.M.'s items that were recovered after officers executed a search warrant. "The severity of the sanction should increase in direct proportion to an increase in offense severity . . . ." Minn. Sent. Guidelines 1.A.2 (2016). A gross-misdemeanor conviction is appropriate for a theft of property with a value of more than $500 but less than $1,000. Minn. Stat. § 609.52, subd. 3(4) (2014). But "if the value of the property . . . stolen exceeds $5,000," the proportionate sentence is "imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both." Minn. Stat. § 609.52, subd. 3(2) (2014). This is consistent with the felony to which Jaunich pleaded guilty, which

carries a recommended sentence of "imprisonment for not more than ten years or . . . payment of a fine of not more than $20,000, or both." Minn. Stat. § 609.582, subd. 2(a).

Although the district court enjoys broad discretion over sentencing matters, "[t]his court will modify a departure if it has a strong feeling the sentence is inappropriate to the case." *State v. Law*, 620 N.W.2d 562, 564 (Minn. App. 2000), *review denied* (Minn. Dec. 20, 2000). We are unable to find support in the record for the district court's decision to depart from the penalty that is consistent with the value of property taken from D.M.

The evidence establishes that Jaunich's offense was not significantly less serious than the typical second-degree burglary. Arguably, Jaunich's actions designed to terrorize D.M. by breaking into her home, destroying her property, and leaving blood in the kitchen constitute an offense that is more serious than typical second-degree burglary. And, as discussed, the record does not contain evidence that Jaunich, due to mental impairment, lacked substantial capacity for judgment when the offense was committed, nor does it otherwise support a downward departure. Because we conclude that the district court abused its discretion by imposing a downward durational departure, we reverse and remand to the district court for imposition of the presumptive sentence.

**Reversed and remanded.**

11