*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0449**

State of Minnesota,
Respondent,

vs.

Keith Alan Powelson,
Appellant.

**Filed December 26, 2023
Affirmed
Hooten, Judge**[*]

Lac qui Parle County District Court
File No. 37-CR-21-297

Keith Ellison, Attorney General, Ed Stockmeyer, Assistant Attorney General, St. Paul, Minnesota; and

Richard Stulz, Lac qui Parle County Attorney, Madison, Minnesota (for respondent)

John E. Mack, New London Law, P.A., New London, Minnesota (for appellant)

　　　Considered and decided by Cochran, Presiding Judge; Segal, Chief Judge; and

Hooten, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**HOOTEN**, Judge

A jury found appellant guilty of four counts of second-degree assault for brandishing and discharging a shotgun during a disagreement involving a father, grandfather, and two children. In this direct appeal from the final judgment of conviction and sentence, appellant alleges: (1) the district court committed plain error by allowing the victims to testify about their fear responses to appellant's conduct; (2) the evidence was insufficient to prove beyond a reasonable doubt that appellant acted with the intent to cause the victims to fear immediate bodily harm; and (3) the district court abused its discretion by denying his motion for downward departure at sentencing.

Because it was relevant circumstantial evidence of appellant's intent, the district court committed no error in allowing the victims' testimony regarding their fear. Because the circumstances proved at trial support an inference of guilt and because appellant's purported hypothesis other than guilt relies upon "mere conjecture," the evidence was sufficient. And because the district court acted within its discretion in denying appellant's departure motion, we affirm.

**FACTS**

In November 2021, appellant Keith Alan Powelson agreed to an in-person meeting with another individual to finalize a transaction they had started through a listing posted to an online social media marketplace. Powelson would receive cash and a used vehicle in exchange for several cords of firewood on Powelson's property.

Equipped with a tractor and trailer and accompanied by two children and their grandfather, the individual met Powelson at his farmstead. Using the tractor, the family began loading the trailer with firewood. Believing they were taking more than he had agreed to sell them as part of the exchange, Powelson became frustrated, and an argument arose. The argument was apparently brief and largely inaudible, due to the noise of the tractor. But while the family continued to load wood into the trailer, Powelson obtained a shotgun from his house, stood about sixty feet from the family, discharged a single shotgun shell into the air, and shook the shotgun with both hands above his head. The family fled the property; Powelson telephoned law enforcement, reporting them for stealing firewood.

In response, a sheriff's deputy was dispatched to Powelson's farm to take a report. During his conversation with the deputy, Powelson admitted to discharging one round from his shotgun and stated he did so to "get their attention." The deputy arrested Powelson. Respondent State of Minnesota charged Powelson with four counts of second-degree assault with a dangerous weapon pursuant to Minn. Stat. § 609.222, subd. 1 (2020), for discharging a firearm with intent to cause fear of immediate bodily harm in each of the four family members.

Each of Powelson's four victims, including the two children, testified at trial, describing, without an objection, their fear of bodily harm and other subjective reactions to Powelson's discharge and brandishing of the shotgun. The jury returned guilty verdicts on all four counts. Sentenced on one count, Powelson received the statutory presumptive minimum sentence of 36 months, pursuant to Minn. Stat. § 609.11, subds. 5, 9 (2020).

Powelson appeals.

3

**DECISION**

**I.** **The district court did not commit error by allowing testimony from the victims as circumstantial evidence of Powelson's intent.**

Appellate courts review an unobjected-to error under the "plain error test." *State v. Myhre*, 875 N.W.2d 799, 804 (Minn. 2016). "In order to meet the plain error standard, a criminal defendant must show that (1) there was an error, (2) the error was plain, and (3) the error affected the defendant's substantial rights." *Id.* (citing *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998)). If the three prongs of the plain-error test are met, the appellate court may correct the plain error only if it "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Pulczinski v. State*, 972 N.W.2d 347, 355-56 (Minn. 2022).

Whoever assaults another with a dangerous weapon is guilty of second-degree assault. Minn. Stat. § 609.222, subd. 1. Assault includes acts done with intent to cause fear in another of immediate bodily harm. Minn. Stat. § 609.02, subd. 10(1) (2020). "With intent to" means that the actor either "has a purpose to do the thing or cause the result specified" or "believes that the act, if successful, will cause that result." Minn. Stat. § 609.02, subd. 9(4) (2020). Offenses meeting this definition are sometimes referred to as "assault-fear" offenses. *State v. Fleck*, 810 N.W. 2d 303, 308 (Minn. 2012).

During Powelson's trial, the victims each testified about their fear of immediate bodily harm and other subjective reactions to Powelson's discharge and brandishing of the shotgun. Because Powelson did not object to this testimony, we review for plain error.

*Myhre*, 875 N.W.2d at 804. The threshold step in a plain error analysis is determining whether there is an error. *Id.*

Powelson argues that the district court's "admission of [the victims'] statements of fear was erroneous because such evidence is not relevant" to determining the intent with which he acted or if his act was "done without intent to cause fear." He claims that since he testified that he did not intend to cause fear of bodily harm when he fired the gun, he is not culpable, even if the victims feared or reasonably feared that his actions would cause them immediate bodily harm.

Whether Powelson acted with intent to cause the victims to fear immediate bodily harm is a question regarding his own state of mind at the time of the action; however, Powelson's conclusion that a victims' subjective reaction to his actions is not relevant to a determination of his state of mind is incorrect. Victims of assault-fear offenses may testify about the fear they subjectively experienced in response to a defendant's conduct. *State v. Hough*, 585 N.W.2d 393, 396 (Minn. 1998) (although a defendant's intent is the focal point of proving an assault-fear claim, "the effect of the assault on the victim is frequently introduced as trial evidence of the defendant's intent"). Such testimony is relevant circumstantial evidence that a fact-finder might rely on to make reasonable inferences about the intent and purpose with which a defendant was acting, and the weight afforded thereto is a credibility matter for the jury. *See State v. Fardan*, 773 N.W.2d 303, 321 (Minn. 2009) (a defendant's intent may be reasonably inferred from other facts and is usually resolved circumstantially by the fact-finder); *Davis v. State*, 595 N.W.2d 520, 525-26 (Minn. 1999) (the fact-finder can discern a defendant's intent from the totality of

5

circumstances); *State v. Schweppe*, 237 N.W.2d 609, 614 (Minn. 1975) (a victim's reaction to threatening words or conduct is "circumstantial evidence relevant to the element of intent of the defendant in making the threat"); *Hough*, 585 N.W.2d at 397 (a person intends to cause fear of immediate bodily harm if such fear would be a "natural and probable consequence" of his conduct).

It is evident that the challenged testimony is consistent with the well-established rule that Powelson's intent is a fact which may be proven by circumstantial evidence, *Fardan*, 773 N.W.2d at 321, reasonably inferred from other facts such as testimony by a victim as to how they reacted to the threatening conduct, *Hough*, 585 N.W.2d at 396. We therefore discern no error by the district court.[1]

## II. The evidence is sufficient to establish that Powelson acted with intent to cause fear of immediate bodily harm.

Within Powelson's argument that admission of the victims' testimony was an evidentiary error, he also questions the sufficiency of the evidence for his conviction. He argues that even if the victims' testimony was admitted without error, then the evidence that he acted with the intent necessary to support an assault-fear conviction pursuant to Minn. Stat. § 609.222, subd. 1, is nevertheless insufficient because it fails to prove that he intended to cause fear of imminent bodily harm when he brandished and discharged the shotgun.

Not fully appreciating the extent to which these two matters are reviewed as entirely separate inquiries, the assertion as briefed generally lacks relevant argument and authority

---

[1] Finding no error, the remainder of the plain error test need not be examined.

6

consistent with the standard of review for mounting a sufficiency challenge. We ordinarily decline to review issues that lack relevant argument and authority because inadequately briefed issues are not properly before an appellate court. *State v. Butcher*, 563 N.W.2d 776, 780 (Minn. App. 1997), *rev. denied* (Minn. Aug. 5, 1997); *see McKenzie v. State*, 583 N.W.2d 744, 746 n.1 (Minn. 1998) (applying the rule that arguments not briefed are waived in an appeal in which the appellant "allude[d] to" an issue but "fail[ed] to address them in the argument portion of his brief"). Although appellate courts may decline to reach inadequately briefed issues, we elect to address Powelson's argument on its merits.

When reviewing an appellant's claim that a conviction fails for insufficiency of the evidence, this court examines the record to determine whether the facts or circumstances proved at trial, and the legitimate inferences drawn consistent from them, would be sufficient to permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted. *State v. Griffin*, 887 N.W.2d 257, 263 (Minn. 2016). If the sufficiency challenge is directed toward a guilty verdict that relied on circumstantial evidence to prove an element of the offense, our review consists of a two-step inquiry. *State v. Silvernail*, 831 N.W.2d 594, 598-99 (Minn. 2013).

In step one, we review the evidence in the light most favorable to guilt and reject any evidence that conflicts with the verdict to identify the "circumstances proved" and ask whether those circumstances permitted the jury's finding of guilt. *State v. Allwine*, 963 N.W.2d 178, 186 (Minn. 2021). In step two, we determine whether a contrary, nonspeculative, and reasonable inference of innocence can be drawn from the same set of circumstances proved. *Id.* This means the circumstances proved must be "consistent with

guilt and inconsistent with any rational hypothesis except that of guilt." *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). An appellant's alternative hypothesis to guilt is not a rational hypothesis if it is based on "mere conjecture." *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008). *See also State v. Ostrem*, 535 N.W.2d 916, 923 (Minn. 1995) (a hypothesis is not rational unless the appellant points to evidence in the record that is consistent with a theory other than guilt). Ultimately, challenges to the sufficiency of evidence fail and the conviction is affirmed if an appellant's proposed theory of innocence seems unreasonable in light of the circumstances proved. *State v. Taylor*, 650 N.W.2d 190, 206 (Minn. 2002).

The circumstances proved at trial which are relevant to Powelson's intent include: (1) during a brief verbal dispute between Powelson and another individual regarding an exchange of goods, which occurred in the presence of two children, Powelson retrieved a shotgun; (2) Powelson fired the shotgun into the air, and then brandished it above his head, shaking it with both hands; (3) concerned for their safety, the family fled the property; (4) Powelson called law enforcement to report the family for stealing his wood (a deputy was dispatched "for a verbal argument over a civil matter" that was "over one party taking more wood than had been agreed upon"); and (5) his discharge of the shotgun became known to law enforcement after Powelson began explaining the incident to the deputy responding to his call.

The jury's conclusion that Powelson intended his conduct to cause the family immediate fear of bodily harm is consistent with and permitted by these circumstances. As to the question of whether these circumstances also exclude any inference of innocence

8

that is nonspeculative and reasonable, Powelson contends that an inference other than guilt exists for two reasons.

First, he contends that "[a] warning shot is meant to get attention or to get a party to stop, not to cause them to have fear of death or great bodily harm." But this assertion is not a circumstance proved because it is conflicts with the state's evidence and is inconsistent with the jury's verdict. *See Allwine*, 963 N.W.2d at 186 ("In identifying the circumstances proved, we defer 'to the jury's . . . rejection of evidence in the record that conflicted with the circumstances proved by the State.'") (quoting *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010)). *See also id.* ("[W]e are bound to disregard evidence that is inconsistent with the jury's verdict when identifying the circumstances proved") (citing *State v. Harris*, 895 N.W.2d 592, 601 (Minn. 2017)). And in this context,[2] that inference is neither contrary nor reasonable. *Id.* (requiring a "contrary, nonspeculative, and reasonable inference of innocence").

Powelson's theory is not contrary because an inference of intent to cause fear of immediate bodily harm is not foreclosed by an intent to capture the family's attention; instead, the fear of harm caused by gunfire offers an explanation for the very reason why Powelson knew that firing the shotgun would achieve his desired result of commandeering

---

[2] This is not a case about whether Powelson had legal justification for the use of or threat to use force or whether such force was reasonable under the circumstances. Limited to a question of the intent or purpose with which Powelson acted, our analysis in this decision has no persuasive relevance to the resolution of an unrelated question that might arise in another case; for example, whether firing a warning shot may be a reasonable use of force.

9

their attention. Accordingly, his first theory of innocence is merely another link in a chain of inferences consistent with a hypothesis of guilt.

And even if Powelson's theory—that he only meant to get the family's attention—is contrary, it nonetheless is not reasonable. Additional circumstances proved which are relevant to this theory, include: (1) when Powelson exited his house, he did not try to speak with any of the family members, gesture at them, or otherwise attempt to get their attention before firing the shotgun; (2) the grandfather and father even had their backs to Powelson when he fired the shotgun; (3) afraid of being shot, they scrambled off Powelson's property in such a hurry that they did not sign the vehicle title over to Powelson and left behind a load of wood they never returned to retrieve; (4) the grandfather testified that after hearing the warning shot, he was alarmed that "[t]he next one might be in the back"; and (5) the father testified:

> I had my step-dad and my oldest boy get in the truck and leave and had my youngest boy run for the pickup and I got on the tractor and literally drove it as fast as I could onto the car trailer, dropped it, and put it in gear, shut it off. I didn't chain it down or anything. I just drove outta there and I chained it down about a mile away from his place . . . my son was sitting in the passenger seat of my pickup, looking right back at me as I loaded [the] tractor and all I can think about is, am I gonna get shot in the back with my kid watching me or not? . . . If he wanted to talk, all he had to do was walk over and talk.

Under these circumstances—particularly when Powelson raised the shotgun above his head in a menacing manner immediately after discharging a round—no reasonable person or child would think that Powelson was just trying just to get their attention and had no intent to cause fear of immediate bodily harm. Powelson's first theory, that he only

10

meant to get their attention, is not a reasonable inference of innocence that emerges from the circumstances proved.

Second, Powelson contends that he "initiated contact with the police, which he would not have done had he intended his conduct to cause the victims to fear great bodily harm." But the notion that his willingness to contact law enforcement negates an inference that he discharged the shotgun with intent to cause fear of immediate bodily harm is mere conjecture that does not withstand scrutiny. *Tscheu*, 758 N.W.2d at 858. Powelson does not point to, and we are not aware of, any evidence in the record indicating that he even contemplated his own risk of exposure to potential criminal liability prior to contacting law enforcement. Instead, the circumstances of his phone call suggest his eagerness to contact law enforcement was motivated by a hope that such phone call would lead to legal consequences for the family members who took his firewood. Moreover, Powelson fails to square this hypothesis with his concession in his brief that he was criminally culpable under other statutes, as that concession suggests he was therefore still exposing himself to criminal liability by calling law enforcement. Accordingly, Powelson's second theory of innocence is not a reasonable inference of innocence that is supported by the circumstances proved.

## III. The district court acted within its discretion when sentencing Powelson.

"We afford the [district] court great discretion in the imposition of sentences and reverse sentencing decisions only for an abuse of that discretion." *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014) (quotation omitted). Moreover, "[t]his court will not generally review a district court's exercise of its discretion to sentence a defendant *when*

11

*the sentence imposed is within the presumptive guidelines range.*" *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010), *rev. denied* (Minn. July 20, 2010) (emphasis added). Under this deferential standard of review, the fact that a different sentencing court could find permissible grounds for departure on the same record does not mean that it was an abuse of discretion for this sentencer to decline to depart. *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006) (an appellate court "will not ordinarily interfere with a sentence falling within the presumptive sentence range, either dispositionally or durationally, even if there are grounds that would justify departure") (quotation omitted)); *State v. Wall*, 343 N.W.2d 22, 25 (Minn. 1984) ("the mere fact that a mitigating factor is present in a particular case does not obligate the court to . . . impose a shorter term than the presumptive term"); *State v. Pegel*, 795 N.W.2d 251, 253 (Minn. App. 2011) (only in a "rare case" will a reviewing court reverse the imposition of a presumptive sentence).

For violating Minn. Stat. § 609.222, subd. 1, Powelson received a 36-month sentence pursuant to Minn. Stat. § 609.11, subds. 5, 9. A 36-month duration and disposition of commitment reflects the statutory presumptive minimum sentence for the offense he committed; though a district court has discretion to make sentencing departures even further below this presumptive minimum if it "finds substantial and compelling reasons" for doing so. Minn. Stat. § 609.11, subd. 8 (2020).

Powelson contends that the district court abused its discretion by not departing from the presumptive minimum sentence, either dispositionally or durationally. He argues that if his "violation was a crime at all, it is the lowest version of that crime imaginable," and "it is hard to think that any rational judge would sentence a man to three years in prison for

firing a single shot into the air." We are unpersuaded. As the 36-month duration of the presumptive *minimum* sentence that he received presumably already reflects these kinds of considerations, this reasoning is neither substantial nor compelling. And although he notes that he perhaps could have been charged with or pleaded down to an offense with a lighter sentence than the one he was ultimately convicted of violating, this is not itself a basis for appellate relief, even if true. While he contends "there is enough in the record to justify both a dispositional and a durational departure," our inspection of the record that we do have available offers no indication the district court failed to properly exercise its discretion when affording Powelson the presumptive minimum sentence. We are otherwise unable to review the findings of the district court with respect to the sentence Powelson received.[3]

Because we give substantial deference to sentencing decisions within the presumptive guidelines and because Powelson received the presumptive minimum

---

[3] Powelson did not order a transcript of his sentencing hearing. He contends this court does not need a sentencing transcript: "a transcript should be unnecessary." He adds, "if the state thought the sentencing of defendant required a transcript, it could have ordered one itself." He misunderstands his burden.

If an appellant fails to prepare the record necessary for this court to conduct a meaningful appellate review, we may decline to consider those arguments. *See State v. Carlson*, 161 N.W.2d 38, 40 (Minn. 1968) (noting that it is "elementary that a party seeking review has a duty to see that the appellate court is presented with a record which is sufficient to show the alleged errors and all matters necessary to consider the questions presented"); *Bender v. Bender*, 671 N.W.2d 602, 605 (Minn. App. 2003) (clarifying that appellant's duty includes the preparation of any necessary transcripts).

As we would be justified in declining to review Powelson's sentencing arguments altogether, to the extent we elected to address them here, we did so as courtesy.

sentence for the offense, we are convinced that the district court acted within its discretion when sentencing Powelson.

**Affirmed.**