*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0191**

State of Minnesota,
Respondent,

vs.

Sharmark Hussein Jama,
Appellant.

**Filed December 29, 2025
Affirmed
Bentley, Judge**

Blue Earth County District Court
File No. 07-CR-22-3027

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Patrick R. McDermott, Blue Earth County Attorney, Megan E. Gaudette Coryell, Assistant County Attorney, Mankato, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bratvold, Presiding Judge; Schmidt, Judge; and Bentley, Judge.

**NONPRECEDENTIAL OPINION**

**BENTLEY**, Judge

In this direct appeal from a conviction for third-degree possession of a controlled substance, appellant Sharmark Hussein Jama maintains that the district court abused its discretion when it denied his presentence motion to withdraw his guilty plea. In the

alternative, he argues that the district court abused its discretion by denying his motion for a dispositional departure at sentencing. We conclude that the district court acted within its discretion in both respects and therefore affirm.

**FACTS**

Respondent State of Minnesota charged Jama with third-degree possession of methamphetamine in a public-housing zone,[1] and fifth-degree possession of a schedule I, II, III, or IV controlled substance.[2] The complaint alleged that Jama had been subject to an outstanding warrant for probation violations in a separate criminal file. When officers saw Jama drive away from his residence in a public-housing zone, they initiated a stop and arrested Jama. That arrest led to the possession charges in this criminal case file. The officers conducted a search incident to arrest and found a glass bowl pipe with residue that field-tested positive for methamphetamine. A search of Jama's car revealed a scale, several prescription tablets in a nonprescription container, and three small bags of a white substance that also field-tested positive for methamphetamine.

The district court placed Jama on conditional release during the pendency of the proceedings in this case file. Soon after, Jama violated the release conditions when he failed to report to jail to execute a sentence in the separate criminal file and also failed to appear for the omnibus hearing in this case. The district court issued a warrant for his arrest, and

---

[1] Minn. Stat. § 152.023, subd. 2(a)(6) (2022), with reference to Minn. Stat. § 152.023, subd. 3(a) (2022).

[2] Minn. Stat. § 152.025, subd. 2(1) (2022), with reference to Minn. Stat. § 152.025, subd. 4(b) (2022).

he was apprehended several months later. The district court again placed Jama on conditional release, and Jama again violated his release conditions. After he failed to appear for a pretrial hearing, the district court issued another warrant for his arrest. Jama was arrested over a year later and remained in custody as this case proceeded to trial.

The following facts derive from the transcript of a subsequent pretrial hearing. About two weeks before the hearing, the state conveyed two plea offers to Jama without expiration dates. Jama discussed the offers with his attorney, but he had not communicated any decision to the state as to whether he would accept a plea. Then, on the afternoon before the hearing, the state informed Jama's attorney by email that the offers would expire at the hearing. Jama's attorney was unable to contact Jama about the imminent deadline until they met just prior to the hearing.

At the start of the hearing, Jama's attorney stated on the record that she was a "little bit disturbed" about the pressure Jama was under to make his decision. She explained that she spoke to Jama about her concerns and "talked about . . . asking the Court to set a plea hearing for a few days." But she clarified that, while Jama understood her concerns, he still "indicat[ed] that he would like to put a plea on the record today" and to accept the offer to plead guilty to third-degree controlled-substance possession with the understanding that he would be permitted to argue for a dispositional departure at sentencing and that the state would dismiss the fifth-degree charge. The district court asked Jama, "Are you in agreement with this?" Jama affirmed that he would proceed with the plea. Then, shortly after the court began the waiver of trial rights, Jama asked if he could "say a word with [his attorney] for a second." This was the first of several pauses throughout the hearing when

Jama stopped to consult with his attorney. After the last of those exchanges, Jama's attorney asked the district court if she could explain the plea agreement and possible trial outcomes on the record. After doing so, she asked Jama if he was "comfortable moving forward with the plea." After an eight-second pause, he answered, "Yes."

The court completed the waiver of trial rights and turned to the factual basis of the plea. Jama stated that he possessed "a gram and a half of methamphetamine in [his] pocket" and a "pipe that is used to smoke it" while leaving his home in a public-housing zone. He acknowledged that the substance he possessed tested positive as methamphetamine in field and confirmatory tests by police but that it had not yet been tested by the Bureau of Criminal Apprehension. The district court determined there was a valid waiver of rights and factual basis for the plea and accepted the plea.

Shortly after the hearing, Jama contacted his attorney about withdrawing the plea. He filed a motion to withdraw the plea on the following business day, arguing that he had "mere moments" to make his decision and that "[i]t is fair and just that he be permitted to withdraw his hastily entered plea."

At a hearing on the motion, Jama's attorney argued that the plea was involuntary because of the improper pressure leveraged on him by the state's sudden deadline. As evidence, she discussed Jama's demeanor at the plea hearing, noting that he was "shaky in his responses," he "vacillated throughout the plea," and he asked "many questions" throughout. The district court agreed with the attorney's characterization of Jama's demeanor at the hearing, stating, "[E]verything you said about . . . [his] reaction and such is true. I mean I saw it myself." But the district court explained that it had "a hard time

seeing . . . how the fair and just standard [was] met" to allow a plea withdrawal. The state argued that it would be prejudiced by a withdrawal and that there is pressure in "every single case" involving a plea.

The district court denied Jama's motion to withdraw. In its order, the district court reasoned, "It is not unreasonable for the prosecutor to set a deadline and nothing requires an offer remain open for any particular length of time." "It would not be fair and just," the court stated, "to continue to delay these cases which have been delayed for over two years, particularly when much of the delay was the result of [Jama] not appearing for hearings and being on arrest warrant status for over a year."

At sentencing, Jama moved for a dispositional departure. The presumptive sentence was 45 months' imprisonment, but Jama argued that he was "particularly amenable" to probation and that a sentence consisting of probation in a treatment setting would help him address his struggles with chemical dependency. The district court denied the departure motion and imposed the presumptive sentence after considering Jama's criminal history, his conditional release violations, and the availability of treatment and programming in prison.

Jama appeals.

## DECISION

Jama argues that the district court abused its discretion in denying his motion to withdraw his guilty plea under the fair-and-just standard because the plea was involuntary. He separately argues that the district court abused its discretion when it found that he is not

5

particularly amenable to probation and denied the departure motion on that basis. We address each argument in turn.

## I

Jama argues that his plea was involuntary because of the "extreme pressure" the state placed on him in imposing a "sudden and unexpected" deadline. He maintains that the district court abused its discretion in deciding it was not fair and just to allow him to withdraw the plea.

At any time, a district court "must allow a defendant to withdraw a guilty plea" if the defendant establishes "that withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. If a motion to withdraw a plea is brought before sentencing, a district court "may allow a defendant to withdraw a plea . . . if it is fair and just to do so." Minn. R. Crim. P. 15.05, subd. 2. The fair-and-just standard is "less demanding" than the manifest-injustice standard. *State v. Lopez*, 794 N.W.2d 379, 382 (Minn. 2011).

Because Jama moved to withdraw his plea before sentencing, the district court applied the fair-and-just standard. Under that framework, district courts must consider both (1) the "reasons advanced by the defendant in support of the motion" and (2) "any prejudice the granting of the motion would cause the prosecution" because of "actions taken in reliance upon the defendant's plea." Minn. R. Crim. P. 15.05, subd. 2. The defendant has the burden to show why withdrawal is fair and just. *State v. Raleigh*, 778 N.W.2d 90, 97 (Minn. 2010). We review the district court's decision to deny a defendant's motion to withdraw for an abuse of discretion, reversing only in the "rare case." *Id.*

6

(quotation omitted). A district court abuses its discretion when "its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Hallmark*, 927 N.W.2d 281, 291 (Minn. 2019) (quotation omitted).

Jama's argument that there is a fair-and-just reason for withdrawal turns on the voluntariness of his plea. Voluntariness "ensures a defendant is not pleading guilty due to improper pressure or coercion." *Raleigh*, 778 N.W.2d at 96. The state may not secure a guilty plea "through actual or threatened physical harm or by mental coercion that 'overbear[s] the will of the defendant.'" *State v. Abdisalan*, 661 N.W.2d 691, 694 (Minn. App. 2003) (quoting *State v. Ecker*, 524 N.W.2d 712, 719 (Minn. 1994)), *rev. denied* (Minn. Aug. 19, 2003). To determine whether a plea was voluntary, courts must consider "all of the relevant circumstances surrounding it." *State v. Danh*, 516 N.W.2d 539, 544 (Minn. 1994) (quotation omitted). A district court's determination that a plea is voluntary is a finding of fact that appellate courts will not disturb unless it is clearly erroneous. *Id.*

Jama argues that his plea was involuntary because it was "hastily entered" and made under "improper pressure." The district court rejected that view of the record. It determined that the state's imposition of the deadline was "objectively" not coercive. It considered that Jama "had more than two years to consider how he wanted to resolve the case," that Jama had learned of the plea offers a couple weeks before the hearing, and that Jama "chose not to" go forward with a trial.

In reaching that decision, the district court compared the facts of this case to those in *Abdisalan*. We agree that *Abdisalan* provides a helpful point of comparison. There, a defendant asked this court to reverse the denial of his motion to withdraw a guilty plea,

7

arguing in part that the plea was coerced and hastily entered. *Abdisalan*, 661 N.W.2d at 694. We concluded that no improper coercion occurred in that case because the decision to plea was left "to him alone," he was informed of his rights and the consequences of the plea, and he admitted to the factual basis of his conviction. *Id.* at 694-95. We further determined that the plea was not hastily entered because Abdisalan had two days to consider the plea offer before he decided to enter a plea, he "changed his mind back and forth" throughout pretrial proceedings and voir dire, and when Abdisalan ultimately decided to enter the plea, his attorney offered him more time to consider his decision if needed. *Id.* at 695.

Jama argues that *Abdisalan* is distinguishable because Jama had not been contemplating the plea offers "in light of a deadline" before the hearing and he was not offered additional time to consider them, as Abdisalan was. We are not persuaded that these are material differences. First, even if the deadline added pressure to the decision, Jama had two weeks to consider the plea offers, whereas Abdisalan had two days. Second, the district court asked Jama twice at the hearing whether he had enough time to discuss his decision with his attorney. Each time, Jama said that he did. Jama's attorney also stated on the record that she had expressed her concerns about the deadline to him, including suggesting that they could "ask[] the Court to set a plea hearing for a few days." Jama still decided to enter a plea that day.

We are mindful that the state imposed a deadline here with little advanced notice, which caught Jama and his counsel off guard. Yet, as the district court noted, Jama has not presented authority requiring the state to keep a plea offer open for a certain amount of

8

time. Rather, the sudden imposition of a deadline is a factor the district court should—and did—consider in determining whether a plea was voluntary. Based upon the circumstances in this case, we are not persuaded that the district court's finding that the plea was voluntary was clearly erroneous.

Because we are unpersuaded by Jama's position that the district court clearly erred in finding that the plea was voluntary, we need not consider the extent of prejudice to the state. *See Raleigh*, 77 N.W.2d at 98 (concluding that a lack of state prejudice is immaterial when the defendant "fail[s] to advance reasons why withdrawal is fair and just"). We therefore conclude that the district court did not abuse its discretion in denying Jama's motion to withdraw under the fair-and-just standard.[3]

## II

Jama separately argues that the district court abused its discretion in denying his motion for a dispositional departure. District courts have great discretion to impose sentences in accordance with the Minnesota Sentencing Guidelines. *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014). A district court may depart from the guidelines only if a "substantial and compelling" reason is provided. *Id.* at 308 (quotation omitted); Minn.

---

[3] Jama also invokes the manifest-injustice standard in his brief, but he does not clearly apply that standard in his arguments. In any event, because the fair-and-just standard is less demanding, a challenge under the manifest-injustice standard would fail for the same reasons that lead us to conclude Jama is not entitled to relief under the fair-and-just standard. Because the district court did not clearly err in determining that the plea was voluntary, which is the only apparent basis underlying Jama's manifest-injustice argument, Jama has not established that a manifest injustice occurred. *See State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007) (noting that a manifest injustice occurs when a plea is not accurate, voluntary, or intelligent).

Sent'g Guidelines 2.D.1.c (2022). We review a district court's decision to deny a motion for dispositional departure for abuse of discretion, again reversing only in the "rare case." *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006). We will affirm the district court's sentencing decision "as long as the record shows the sentencing court carefully evaluated all the testimony and information presented before making a determination." *State v. Van Ruler*, 378 N.W.2d 77, 81 (Minn. App. 1985).

The guidelines contemplate several reasons for departure from a presumptive sentence, including when the offender is "particularly amenable to probation." Minn. Sent'g Guidelines 2.D.3.a.(7) (2022). When determining whether particular amenability to probation exists, a district court may consider the following factors: "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). But "[t]he fact that a mitigating factor was clearly present [does] not obligate [a] court to place defendant on probation or impose a shorter term than the presumptive term." *State v. Wall*, 343 N.W.2d 22, 25 (Minn. 1984).

Jama argues that the district court abused its discretion in determining he is not particularly amenable to probation, because he is motivated to enter treatment, he has shown remorse, and he has recently cooperated with law enforcement. He maintains that those considerations outweigh the district court's focus on his criminal history and chemical dependency, and they justify a dispositional departure.

We are not persuaded that the district court abused its discretion. As the district court pointed out, several of the *Trog* factors weigh against Jama's amenability to

10

probation. With respect to Jama's prior record, the court stated that Jama's "criminal activity has been going on for quite a while" and noted that this would be his fifth felony conviction. The court also found that Jama's lack of cooperation throughout the case proceedings weighed against a departure, emphasizing Jama's conditional release violations and the fact that there was an outstanding warrant for his arrest for over a year before he was apprehended. These findings have a firm basis in the record and reflect careful evaluation by the district court in reaching its decision. *See Van Ruler*, 378 N.W.2d at 81. As a result, even if other mitigating factors are present, the district court did not abuse its discretion in declining to depart. *See Wall*, 343 N.W.2d at 25.

The cases Jama cites do not convince us otherwise. Jama relies on *State v. Malinski*, 353 N.W.2d 207 (Minn. App. 1984), *rev. denied* (Minn. Oct. 16, 1984), and *State v. Hennessey*, 328 N.W.2d 442 (Minn. 1983), as examples of similar circumstances under which dispositional departures were granted and then affirmed on appeal. Given our standard of review that is deferential to the district court, these cases are inapposite to the inquiry here, where we must decide whether to reverse a denial of a departure. In any event, the facts of those cases are distinguishable.

In *Malinski*, the district court had determined that departure was appropriate, despite the defendant's extensive criminal record, because of his significant, positive lifestyle changes that are not present in the record here. 353 N.W.2d at 209-10. In *Hennessey*, the district court granted a departure, even though the defendant had a significant criminal history, because he would be participating in a strict probation rehabilitation program, he displayed self-motivation to change, and his prior felonies were property crimes. 328

11

N.W.2d at 442-43. Here, Jama had a history of noncompliance with release conditions and the district court concluded that treatment and programming for chemical dependency was available for Jama in prison.

In sum, we conclude that the district court did not abuse its discretion in denying the motion for dispositional departure and imposing a presumptive sentence.

**Affirmed.**