STATE of Minnesota, Appellant,

v.

Cory Thomas MARTINSON,
Respondent.

No. A03-1079.

Court of Appeals of Minnesota.

Dec. 9, 2003.

Mike Hatch, Attorney General, St. Paul; and Janelle Kendall, Stearns County Attorney, Dennis A. Plahn, Assistant Stearns County Attorney, St. Cloud, for appellant.

John M. Stuart, State Public Defender, Minneapolis, MN; and Leonard A. Weiler, Assistant District Public Defender, St. Cloud, MN, for respondent.

Considered and decided by WILLIS, Presiding Judge; TOUSSAINT, Chief Judge; and SHUMAKER, Judge.

## OPINION

GORDON W. SHUMAKER, Judge.

Appellant State of Minnesota contends that the district court abused its discretion by departing durationally downward from the sentencing guidelines, arguing that the court failed to make adequate findings of substantial and compelling circumstances to support the departure. Because the record shows that respondent suffered from an extreme mental impairment, the court did not abuse its discretion. We affirm.

## FACTS

On November 22, 2000, respondent Cory Thomas Martinson intentionally swerved his car into the path of oncoming traffic and collided with another vehicle. His wife C.A.M., riding as his passenger, was killed instantly.

The state charged Martinson with second-degree murder and criminal vehicular homicide. The district court ordered a rule 20 mental examination. The examiners, a staff psychologist and a staff psychiatrist at the Minnesota Security Hospital, found Martinson competent to stand trial and gave opinions as to his mental status at the time of the collision.

Martinson ultimately waived a jury trial and asserted a mental-illness defense. The court bifurcated the trial, found Martinson guilty of felony second-degree murder and criminal vehicular homicide, and rejected his mental-illness defense. The

court acknowledged Martinson's major mental illness but did not believe it was "florid" at the time of the collision.

Despite rejecting Martinson's mental-illness defense, the court found that his "mental condition is a substantial and compelling factor justifying a downward [durational] departure," and sentenced Martinson to an executed term of 75 months instead of the presumptive 150 months.

The record available to the court for sentencing showed that Martinson was suffering from paranoid schizophrenia at the time of the incident and detailed his past psychiatric history. He began to develop delusional paranoia in the late 1990s, which manifested itself in the belief that his former co-workers at Distinguished Craftsmen, Inc., (DCI) had enlisted the help of "mobsters" to track him down and kill him.

In the summer of 2000, Martinson was exposed to a mixture of bleach and toxic cleaning chemicals while training with his army reserve unit. Initially treated for lung irritation, Martinson was eventually diagnosed with psychotic delusions and was hospitalized. Army records indicate he was convinced the army and the psychiatric hospital personnel were attempting to kill him.

After his release, his paranoia became more extensive. He refused to eat food from New York or New Jersey where the "Italian Mafioso" lived, thought poisonous gas was being sprayed into his apartment, and attempted to patch tiny holes in the wall and ceiling with toothpaste. He told evaluators that he discovered a surveillance camera in his television and that he routinely checked his car for bombs before using it.

By the fall of 2000, Martinson believed that C.A.M. was his only source of protection, that she protected him against assassination, and that she was the only one who could provide food that was not poisoned. However, he eventually "discovered" that C.A.M. worked for the CIA or secret service. This discovery led to the belief that her superiors wanted him dead because they preferred unmarried employees.

In November, C.A.M. began to demand that Martinson seek mental-health treatment. He realized that she would leave him if he refused. The psychological report explained that

> [h]e was thus caught between the understanding that if he did not seek treatment, he would lose his wife and his sole protector who kept him from harm at the hands of DCI and the Mafia. On the other hand, if he went into the hospital to accede to her demands, the doctors there would kill him. Finally, if he stayed with her, he recognized that she might have her own motivations to do him harm relative to her role with the Feds.

As Martinson and C.A.M. were driving on the morning of the incident, she told him "we have to have a talk." He later recalled that he "was thinking she was going to let DCI get [him] because she was sick of [him]. [He] didn't know who she was working for. [He] thought it was the Secret Service." Shortly after his wife's comments, he turned his wheel abruptly to the left and swerved into oncoming traffic. C.A.M. died immediately.

At trial, Martinson presented a defense of not guilty by reason of mental illness. The district court found he did not establish that his mental condition at the time of the incident satisfied the M'Naghten standard for a mental-illness defense, and rejected the defense. The district court found that respondent suffers from a major mental illness but rejected respondent's mental-illness defense because his condition was not "florid" at the time of

the crimes, and found him guilty. Reciting orally on the record findings as to respondent's mental illness, the court departed durationally from the presumptive guidelines sentence. The district court sentenced Martinson to a downward durational departure of 75 months in prison instead of the presumptive sentence of 150 months. On appeal, the state challenges the district court's departure from the sentencing guidelines, claiming the court erred in failing to properly support the decision on the record.

## ISSUES

1. Did the court abuse its discretion in departing downward from the sentencing guidelines?

2. Did the court err by failing to provide written findings to support its departure?

## ANALYSIS

### I.

a. *Substantial and Compelling Circumstances*

The state contends that the district court abused its discretion in departing durationally from the presumptive guidelines sentence because there are no substantial and compelling circumstances to support a downward departure. This court reviews a departure from the sentencing guidelines for an abuse of discretion. *State v. Schmit,* 601 N.W.2d 896, 898 (Minn.1999). The district court has broad discretion to depart if substantial and compelling circumstances exist, and this court generally will not interfere with the exercise of that discretion. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981). Mental impairment that causes an offender to lack substantial capacity for judgment when the offense was committed will support a

downward departure. Minn. Sent. Guidelines II.D.2.a.(3).

Recognizing that the presumptive sentence provided by the sentencing guidelines will not be "appropriate, reasonable, or equitable" in every case, the guidelines commission determined that it was appropriate to allow sentencing courts, on occasion, to depart from the presumptive sentence. *Id.* cmt. II.D.01. But departures are permitted only when the case involves substantial and compelling circumstances. *Id.* II.D. The guidelines provide that when "[t]he offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed," the sentencing court may use that impairment as a mitigating factor to support a downward departure. *Id.* II. D.2.a.(3).

When an offender has been diagnosed with paranoia and schizophrenia, the offender's mental impairment is extreme enough to constitute a mitigating factor. *See State v. Wall,* 343 N.W.2d 22, 25 (Minn.1984) (stating that diagnosis of paranoia and schizophrenia is a mitigating factor and holding that record failed to support upward durational sentencing departure where defendant lacked substantial capacity for judgment when he committed the offense).

In this case, the record contains ample unrebutted evidence to support a finding that Martinson suffered from an extreme mental impairment. He was diagnosed with paranoid schizophrenia, and the psychologist and psychiatrist who evaluated him on the order of the district court further determined that he was suffering from paranoid schizophrenia at the time of the incident.

Martinson's condition is well documented in the record. His paranoia manifested itself in irrational fears that his co-workers hired the Mafia to kill him, that he was

under surveillance, and that he was in constant danger of being poisoned. The mental evaluation is supported by army records that state he was convinced the army and hospital personnel were trying to kill him. Finally, his fears were directed at the victim, his wife, whom he believed worked for the CIA or Secret Service and might be willing to kill him to please her superiors. The evaluation clearly explains the dilemma Martinson faced in his own mind when he concluded that his wife was about to leave him.

The expert psychological evidence is uncontroverted that, at all relevant times, Martinson suffered from the psychosis of paranoid schizophrenia. His illness frequently manifests itself in delusional paranoia, causing Martinson to perceive threats against his life by co-workers, physicians, and his spouse. His response to the perceived threats is panic and "wholly irrational" behavior. There is nothing in the record to suggest that Martinson's psychosis is a mild or moderate mental impairment. Rather, there is abundant expert evidence that his condition is sufficiently extreme to meet the requirement that his mental impairment be a substantial and compelling circumstance that provides a basis for a downward departure from the sentencing guidelines.

The district court found that Martinson had a mental illness before, during, and after the incident, and that this illness has impaired him socially and psychologically, both before the act and to the present. The court found specifically that his mental condition was a substantial and compelling factor that justified a downward durational departure. The court did not err in this respect.

b. *Proportionality to the Severity of the Offense*

■ The state next argues that the district court's sentence is not proportional to the severity of the offense of conviction because Martinson murdered his wife and left his child without a mother, who is now dead, and without a father, who is in prison. This court will modify a sentence only if, after consideration of the total record, we have a strong feeling that the sanction imposed is not proportional to the severity of the offense of conviction as aggravated or mitigated by the circumstances of the offense. *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn.1981).

■ The district court may not use an element of the offense to support a departure. *State v. Coley*, 468 N.W.2d 552, 556 (Minn.App.1991). The fact that Martinson murdered his wife is itself an element of the crime. Therefore, it cannot be used to support an argument that a sentence that is modified because of mitigating factors is out of proportion to the severity of the offense.

■ In assessing proportionality, this court must consider "whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Cox*, 343 N.W.2d 641, 643 (Minn. 1984). The questions here, then, are whether the defendant's conduct was more or less serious than the typical offense in which a life is lost and what makes that conduct more or less serious than the typical offense.

■ The only significant difference between this offense and the typical murder is that the typical murderer has not been diagnosed as being psychotic at the time of the offense. Although the district court did not accept Martinson's argument that he did not know the nature of the act he committed, or that it was wrong, the court did recognize that his condition impaired

him psychologically at the time of the offense. This in itself renders Martinson's conduct less serious than that of a defendant whose capacity for judgment at the time of the offense was not substantially impaired. Further, the fact that the victim was a parent is not infrequent or atypical.

■ The state further argues that Martinson's failure to satisfy the M'Naghten standard for a mental-illness defense caused the pronounced sentence to be disproportional to the crimes of which Martinson was convicted. The district court found that Martinson's undisputed psychosis was a substantial mitigating factor in his conduct, even though he was not able to satisfy the M'Naghten test.

■ A defendant may be eligible for a downward departure because of a mental impairment, even absent a M'Naghten defense. *See State v. Barsness,* 473 N.W.2d 325, 329 (Minn.App.1991) (holding that mentally retarded defendant who was found guilty of second-degree murder and manslaughter qualified for downward sentencing departure), *review denied* (Minn. Aug. 29, 1991). The sentencing guidelines emphasize this by including as a "catch-all" mitigating factor "substantial grounds . . . which tend to excuse or mitigate the offender's culpability, although not amounting to a defense." Minn. Sent. Guidelines II.D.2.a.(5). In addition, to limit mitigation under section II.D.2.a.(3) to those who meet the M'Naghten standard for a mental-illness defense would effectively nullify the mitigating factor because the only defendants eligible for it would be those who were not legally responsible for their conduct. Therefore, Martinson's failure to establish a M'Naghten defense does not automatically render him ineligible for departure based on the existence of a mental impairment.

Because the record supports the district court's determination that Martinson suffered from an extreme mental impairment, and the sentence was not out of proportion to the offense of conviction, we hold that the downward departure was within the district court's discretion.

## II.

The state argues that the district court erred by failing to provide written findings to support the departure.

■ A district court is required to follow the procedures of the sentencing guidelines when it pronounces a sentence. Minn.Stat. § 244.09, subd. 5(2) (2002). When departing from the sentencing guidelines, "the district court shall make written findings of fact as to the reasons for the departure." Minn.Stat. § 244.10, subd. 2 (2002). Failure to provide reasons for departure on the record requires remand for imposition of the presumptive guidelines sentence. *State v. Geller,* 665 N.W.2d 514, 517 (Minn.2003). The requirement to provide written reasons for departure is satisfied when the district court makes oral findings on the record. *State v. Bale,* 493 N.W.2d 123, 125 (Minn. App.1992).

■ Because the district court stated on the record that "it is the court's judgment that the defendant's mental condition is a substantial and compelling factor justifying a downward dispositional departure," the district court met the "written findings" requirement.

The state further argues that this oral finding was not specific enough because the district court did not explain why the sentencing departure was "more appropriate, reasonable, or equitable" than the presumptive sentence, as the guidelines require. Minn. Sent. Guidelines II.D.

██ Even if the district court's express findings were not explained with particularity, this court must affirm the departure if the record contains valid and sufficient reasons to support the departure. *State v. Sanchez–Sanchez,* 654 N.W.2d 690, 694 (Minn.App.2002).

██ The district court's stated reasons for the departure are arguably inadequate because the court merely acknowledged that Martinson clearly had a mental illness that impaired him socially and psychologically, and that his condition constituted the required substantial and compelling factor. It did not explain why the downward departure was required as more appropriate, reasonable, or equitable than the presumptive sentence.

However, as discussed above, the record does contain clear, valid, and sufficient reasons to support the district court's conclusion. Therefore, we affirm the district court's departure from the sentencing guidelines.

## DECISION

Because the record shows the district court's downward durational departure was justified by the respondent's extreme mental impairment, the court did not abuse its discretion in departing from the sentencing guidelines. In addition, because the district court provided oral findings on the record to support the departure, it did not err in failing to provide written findings. Although the findings were inadequate, the departure is supported by the record.

**Affirmed.**