*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1747**

State of Minnesota,
Appellant,

vs.

Isaac Gutierrez,
Respondent.

**Filed September 2, 2025
Affirmed
Larson, Judge
Dissenting, Larkin, Judge**

Olmsted County District Court
File No. 55-CR-24-849

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Michael T. Walters, Olmsted County Attorney, A. Michael DeBolt, Andrew M. LeTourneau, Assistant County Attorneys, Rochester, Minnesota (for appellant)

Eric L. Newmark, Newmark Law Office, Minnetonka, Minnesota (for respondent)

Considered and decided by Bentley, Presiding Judge; Larkin, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

Appellant State of Minnesota challenges the district court's decision to grant respondent Isaac Gutierrez's motion for a downward durational departure after a jury found him guilty of second-degree unintentional felony murder under Minn. Stat. § 609.19,

subd. 2(1) (2022). Because we conclude the district court did not abuse its discretion, we affirm.

## FACTS

In February 2024, the state charged Gutierrez with second-degree intentional murder under Minn. Stat. § 609.19, subd. 1(1) (2022), second-degree unintentional felony murder under Minn. Stat. § 609.19, subd. 2(1), and second-degree assault with a dangerous weapon under Minn. Stat. § 609.222, subd. 1 (2022). The following facts were elicited at a jury trial.

On February 3, 2024, Gutierrez and his brother (brother) went shopping at a mall. Afterwards, they drove to a fast-food restaurant. Brother, the driver, attempted to back into a parking spot but was unable to do so because another vehicle "was in the way." The driver of the other vehicle (victim) honked his horn, and a verbal altercation between brother and victim ensued. Obscenities were exchanged, and victim directed brother to "pull forward." Brother and victim both exited their vehicles and continued arguing. Brother took a gun out of his pants and showed it to victim. Victim's mother asked brother to put the gun away, and brother placed it in the driver's seat of his vehicle, next to Guiterrez. From the passenger seat, Gutierrez observed brother and victim physically fighting, but did not join the fight "[b]ecause it was one-on-one." Gutierrez then observed another passenger (passenger) from victim's vehicle join the fight and saw that "brother was struggling" and "using his hands to keep [victim and passenger] away from him rather than throwing punches." At that point, Gutierrez "grabbed the firearm and . . . ran over to try to assist . . . brother." Gutierrez, intending to use the gun "as a . . . striking weapon,"

2

tried to pull victim and passenger off brother. Gutierrez "went to push and then . . . went to strike," using "the palm of [his] hand and the butt of the gun." Gutierrez brought the gun down on victim's back, the gun fired, and a bullet fatally struck victim in the head. After shooting victim, Gutierrez handed the gun to brother and called 911. Gutierrez told the 911 operator that "[s]omeone got shot," and waited "to make sure [victim] got the aid." Law enforcement arrived within minutes and arrested Gutierrez.

At trial, Gutierrez agreed that he did not "know much about the mechanics of firearms." Gutierrez testified that he believed that the gun was unloaded and not "in a position to fire" when he grabbed it. Gutierrez also testified that he did not intentionally pull the trigger.

Before the case was submitted to the jury for deliberation, the state dismissed the second-degree assault charge. Thereafter, the jury found Gutierrez not guilty of second-degree intentional murder and guilty of second-degree unintentional felony murder.

At a later sentencing hearing, Gutierrez moved for a downward dispositional departure or, in the alternative, a downward durational departure to a 48-month executed prison term from the presumptive 150-month executed prison term. The state requested that the district court impose a 180-month executed prison term—a sentence at the top of the presumptive guidelines range. The district court heard arguments from both parties and a statement from Gutierrez. The district court reviewed the sentencing worksheet, presentence investigation report, Gutierrez's motion and memorandum in support of departure, letters of support submitted on Gutierrez's behalf, and a written victim-impact statement. The district court also heard additional victim-impact statements that were read

3

at the sentencing hearing. After receiving this evidence, the district court indicated that it needed more time to decide the appropriate sentence and continued the hearing. The district court expressed that this additional time was necessary so that it could "organize [its] thoughts" and be "sure [it was] doing the right thing for the family, for the community and, . . . for [Gutierrez]." The district court also noted that it had requested a data report from the Minnesota Sentencing Guidelines Commission with statistics regarding departures in second-degree unintentional felony-murder cases.[1]

At the continued sentencing hearing, the district court denied Gutierrez's motion for a downward dispositional departure, granted his motion for a downward durational departure, and sentenced Gutierrez to a 60-month executed prison term. The district court explained that it arrived at its decision after "review[ing] all of the Olmsted County cases . . . since 2001 where a defendant was sentenced to [s]econd [d]egree [u]nintentional [m]urder" with a specific focus on "cases involving a weapon." Accordingly, based on its review of these cases, the district court determined that the circumstances of Gutierrez's crime were "less onerous" than typical, and provided the following explanation for this determination:

> [Gutierrez] in no way planned to shoot [victim] on February 3rd. He was just going to [a fast-food restaurant] for lunch. It was . . . brother who had the permit to carry and introduced the gun to the situation. Unknown to [Gutierrez], . . . brother racked the gun previously so a bullet was in the

---

[1] The data report is in the record. The data report advised the district court that, of the 551 second-degree unintentional felony-murder convictions sentenced between 2001 and 2022, district courts had granted downward durational departures in 86 cases. Of those 86, the data report reflected "[l]ess onerous/weapon type less serious/gun not loaded" as the reason for departure in five cases.

chamber when he brought it back to the truck where [Gutierrez], in a split-second decision, grabbed the gun off the seat.

Further, there were actions of others that played roles in this tragedy. [Victim] himself started the entire situation when instead of patiently waiting for 30 seconds for [brother] to park, [he] rolled down his window, yelled profanities, and ordered [brother] to pull forward so they could fight.

Then [brother] did just that, rather than just leaving the parking lot. The two men confronted each other before [brother] pulled that gun, which didn't even seem to faze [victim].

Then [passenger], rather than just letting this be a one-on-one fight, decided to join the fray, causing [Gutierrez] to make that horrible decision to run to . . . brother's defense with the loaded gun.

Looking at these facts, and then also considering the fact that, [Gutierrez], you did not run from law enforcement. You were cooperative, even calling or attempt[ing] to call 911 yourself.

And finally, even though we had a trial, you accepted responsibility for the role you played, and you have expressed and shown remorse.

So[,] with all of that I do believe a durational departure from the guidelines is warranted.

The district court's departure report—a form created by the Minnesota Sentencing Guidelines Commission—indicates that the district court granted the downward durational departure for the following reasons: "[v]ictim was aggressor in incident" and "[c]rime less onerous than usual."

This appeal follows.

5

**DECISION**

The state challenges the district court's decision to impose a downward durational departure from the Minnesota Sentencing Guidelines. Specifically, the state asserts that the district court abused its discretion when it determined that Gutierrez's conduct was significantly less serious than that typically involved in the commission of second-degree unintentional felony murder.

"We afford the [district] court great discretion in" sentencing and review departure decisions for an abuse of discretion. *State v. Spain*, 590 N.W.2d 85, 88 (Minn. 1999). "A reviewing court generally will not interfere with that discretion unless it has a strong feeling that the sentence is disproportionate to the offense." *State v. Schenk*, 427 N.W.2d 12, 13 (Minn. App. 1988) (quotation omitted). "A district court abuses its discretion when its reasons for departure are improper or inadequate." *State v. Rund*, 896 N.W.2d 527, 532 (Minn. 2017). If a district court's reasons for granting a departure are stated on the record, we "will examine the record to determine if the reasons given justify the departure. . . . If the reasons given justify the departure, the departure will be allowed." *Williams v. State*, 361 N.W.2d 840, 844 (Minn. 1985).

The Minnesota Sentencing Guidelines provide presumptive sentencing ranges to "maintain uniformity, proportionality, rationality, and predictability in sentencing." Minn. Stat. § 244.09, subd. 5 (2024). Therefore, "departures from the guidelines are discouraged and are intended to apply to a small number of cases." *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016). A district court may depart from a presumptive sentence only if there are "identifiable, substantial, and compelling circumstances to support a departure." Minn.

6

Sent'g Guidelines 2.D.1 (2022). "Substantial and compelling circumstances are those circumstances that make the facts of a particular case different from a typical case." *State v. Peake*, 366 N.W.2d 299, 301 (Minn. 1985). When granting a downward durational departure, the district court must rely "on factors that reflect the seriousness of the *offense*, not the characteristics of the offender." *Solberg*, 882 N.W.2d at 623-24. The guidelines provide a "nonexclusive list of factors" that a district court may use to depart. Minn. Sent'g Guidelines 2.D.3 (2022). And "a single mitigating factor, standing alone, may justify a downward durational departure." *Solberg*, 882 N.W.2d at 624-25.

"[T]o be the basis for a downward departure, a factor must tend to excuse or mitigate the offender's culpability for the offense." *State v. Esparza*, 367 N.W.2d 619, 621 (Minn. App. 1985). Indeed, "[a] downward durational departure is justified only if the defendant's conduct was significantly less serious than that typically involved in the commission of the offense." *Solberg*, 882 N.W.2d at 624 (quotation omitted). In determining whether a defendant's conduct was significantly more or less serious than the typical offense, "it is proper for the sentencing court to consider the course of conduct underlying the charge for which the defendant is being sentenced." *State v. Cox*, 343 N.W.2d 641, 643 (Minn. 1984); *see also State v. Weaver*, 796 N.W.2d 561, 573 (Minn. App. 2011), *rev. denied* (Minn. July 19, 2011).

Here, the primary basis upon which the district court granted a downward durational departure was its determination that Gutierrez's crime was significantly less serious[2] than

---

[2] We acknowledge that the district court used the phrase "less onerous" rather than "less serious" when it granted the downward durational departure. Regardless of the specific

7

a typical second-degree unintentional felony murder. A determination that a defendant's conduct was significantly less serious than the typical offense is an adequate reason to support a downward durational departure. *See, e.g.*, *State v. Bauer*, 471 N.W.2d 363, 367-68 (Minn. App. 1991) (affirming a "50 percent downward [durational] departure" for "aiding a suicide" and "felony fetal homicide" convictions based on conclusion that district court "was well within its discretion in finding Bauer's conduct less serious than the typical felony-murder (or feticide) offense"), *rev. denied* (Minn. July 24, 1991); *see also Solberg*, 882 N.W.2d at 627.

We conclude that the record justifies the district court's decision that Gutierrez's offense was significantly less serious than a typical second-degree unintentional felony murder. Before making its decision, the district court obtained a statewide data report and

---

word that it used on the record at the hearing, it is clear that the district court's conclusion was based on its evaluation of the seriousness of Guiterrez's conduct as compared to the typical offense. *See State v. Scheldrup*, No. A23-0442, 2023 WL 5191189, at *3 (Minn. App. Aug. 14, 2023) (rejecting the state's argument that the district court abused its discretion in granting a downward durational departure in part because it "found that [the defendant's] crime was 'less onerous' . . . rather than finding it was 'significantly less serious'"); *see also* Minn. R. Civ. App. P. 136.01, subd. 1(c) ("[N]onprecedential opinions may be cited as persuasive authority."). Further, the "less onerous" language mirrors the forms provided to the district court from the Minnesota Sentencing Guidelines Commission in both the data report and the departure report. And we have frequently affirmed decisions on motions for downward departures, despite the district court's use of the word "onerous" rather than "serious." *See, e.g.*, *id.*; *State v. Ralford*, No. A23-1366, 2024 WL 3248143, at *3-4 (Minn. App. July 1, 2024), *rev. denied* (Oct. 15, 2024); *State v. Juneau*, No. A20-1129, 2022 WL 2298971, at *6-7 (Minn. App. June 27, 2022), *rev. denied* (Minn. Sept. 20, 2022); *State v. Daniliuk*, No. A21-0123, 2021 WL 4059657, at *1 (Minn. App. Sept. 7, 2021); *State v. Royster*, No. A18-1957, 2019 WL 7049505, at *6 (Minn. App. Dec. 23, 2019); *State v. Jentzen*, No. A18-0129, 2018 WL 6168725, at *3 (Minn. App. Nov. 26, 2018); *State v. Nieznanski*, No. A14-2055, 2015 WL 2185319, at *3 (Minn. App. May 11, 2015).

reviewed every second-degree unintentional felony-murder case in Olmsted County in the past 23 years to enable it to determine a "typical" second-degree unintentional felony murder. Upon doing so, the district court determined Guiterrez's conduct was significantly less serious than other similarly charged Olmsted County cases. The district court highlighted that Gutierrez did not instigate the altercation, did not initially introduce the gun into the situation, did not involve himself until the fight became two-against-one, did not plan to shoot victim, did not know the gun was loaded, called 911 after the shooting, and cooperated with law enforcement. These findings were well supported by the evidence introduced at both trial and sentencing.

The state disagrees that this was an appropriate basis for a downward durational departure. According to the state, the district court's decision was based solely on its finding that Guiterrez did not plan the crime. The state contends that lack of planning is already accounted for in the guidelines, which assign a lower severity level to second-degree unintentional murder than to second-degree intentional murder, resulting in a lower presumptive sentence. Minn. Sent'g Guidelines 4.A (2022); *see also* Minn. Stat. § 609.19, subd. 1(1) (2022) (defining second-degree intentional murder as "causes the death of a human being with intent to effect the death of that person or another, but without premeditation"); Minn. Stat. § 609.19, subd. 2(1) (defining second-degree unintentional felony murder as "causes the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense").

The state is correct that the district court may not grant a downward durational departure based on "facts [that] were already taken into account by the legislature in

determining the degree of seriousness of the offense." *Taylor v. State*, 670 N.W.2d 584, 589 (Minn. 2003). But we disagree that the district court relied solely on the lack of planning to determine that Gutierrez's crime was significantly less serious. To the contrary, the district court discussed several characteristics that distinguished Gutierrez's offense, including that Gutierrez did not instigate the altercation, did not initially introduce the gun into the situation, did not involve himself until the fight became two-against-one, did not plan to shoot victim, did not know the gun was loaded, called 911 after the shooting, and cooperated with law enforcement. The record therefore reflects that the district court did precisely what it was charged to do—"consider the course of conduct underlying the charge" to evaluate whether it was significantly less serious than a typical offense. *See Cox*, 343 N.W.2d at 643. Accordingly, we conclude that the district court did not grant the downward durational departure based on its finding that Gutierrez did not plan to shoot victim, but simply discussed it as one component of its evaluation of Guiterrez's overall course of conduct.

The state makes the related argument that the district court failed to adequately explain how the cases it discussed were examples of a typical second-degree unintentional murder or how Gutierrez's conduct was significantly less serious than the conduct of the defendants in those cases. The record belies the state's argument. The district court explained that it ascertained typical-offense conduct for second-degree unintentional murder by "review[ing] all of the Olmsted County cases . . . since 2001 where a defendant was sentenced to [s]econd [d]egree [u]nintentional [m]urder," with a focus on "cases involving a weapon." The district court also explained that Gutierrez's conduct was

10

significantly less serious for the reasons referenced above. And while the state emphasizes factual distinctions between the cases the district court highlighted and Gutierrez's case, the district court made clear that its decision was based on all of the cases it reviewed—not the few cases it mentioned by name.

Lastly, we are charged with using "our collective, collegial experience in reviewing a large number of criminal appeals" to assess whether the district court's determination was justified. *State v. Mattson*, 376 N.W.2d 413, 415 (Minn. 1985) (quotation omitted); *see also Weaver*, 796 N.W.2d at 573-74 ("In the final analysis, an appellate court's decision whether a particular durational departure is justified 'must be based on [its] collective, collegial experience in reviewing a large number of criminal appeals from all the judicial districts.'" (quoting *State v. Norton*, 328 N.W.2d 142, 146-47 (Minn. 1982))). In doing so, we engage in a similar analysis to that conducted by the district court here and make comparisons to similar cases. *See, e.g.*, *Tucker v. State*, 799 N.W.2d 583, 587 (Minn. 2011). Our review of recent second-degree unintentional felony-murder cases throughout the state further supports the district court's determination that Guiterrez's crime was significantly less serious than a typical offense. *See State v. Edmondson*, No. A23-0736, 2024 WL 910685, at *1-2 (Minn. App. Mar. 4, 2024) (the defendant fired a gun into a car with five juvenile occupants, killing one victim, and received a presumptive sentence of 240 months in prison); *State v. Reed*, No. A22-0107, 2023 WL 3048000, at *1-4 (Minn. App. Apr. 24, 2023) (the defendant shot the victim twice after a physical altercation where seven other people were present "in a tight space" and received a presumptive sentence of 180 months in prison); *Daniels v. State*, No. A17-0623, 2018 WL 817286, at *2 (Minn.

11

App. Feb. 12, 2018) (the defendant fired a gun into a group of people causing the victim's death), *rev. denied* (Minn. Apr. 25, 2018).

For these reasons, we conclude the district court did not abuse its discretion when it determined Gutierrez's crime was significantly less serious than a typical second-degree unintentional felony murder.

The state next argues that the district court abused its discretion when it granted the departure on the basis that victim was an aggressor, arguing the district court's finding that victim was the initial aggressor is clearly erroneous. First, as noted above, "a single mitigating factor, standing alone, may justify a downward durational departure." *Solberg*, 882 N.W.2d at 624-25; *see also State v. Malone*, No. A17-1427, 2018 WL 1040763, at *4 (Minn. App. Feb. 26, 2018) (declining to "reach the state's argument that the district court improperly relied on [the defendant's] remorse, responsibility, and amenability to treatment" where the district court also determined the crime was significantly "less serious than typical" as a basis for a downward durational departure). As such, even if the district court erred in considering that the victim was an aggressor, the decision to grant a downward durational departure is adequately supported by the conclusion that Gutierrez's conduct was significantly less serious that that typically involved in the commission of the same offense.

Nevertheless, we do not discern that the district court clearly erred when it found victim was an aggressor. The district court found that "[victim] himself started the entire situation when instead of patiently waiting for 30 seconds for [brother] to park, [he] rolled down his window, yelled profanities, and ordered [brother] to pull forward so they could

12

fight." This finding is well supported by the trial and sentencing record. And, under the Minnesota Sentencing Guidelines, the district court may consider whether "victim was an aggressor," even if not the sole aggressor. Minn. Sent'g Guidelines 2.D.3.a.1; *see also State v. Mayo*, No. A15-0511, 2016 WL 952501, at *8 (Minn. App. Mar. 14, 2016), *rev. denied* (Minn. May 31, 2016). Accordingly, the district court did not abuse its discretion when it relied on the role victim played in the incident because its finding that victim was an aggressor was not clearly erroneous. *See, e.g.*, *State v. Hennum*, 441 N.W.2d 793, 801 (Minn. 1989) (reducing the defendant's sentence where "the victim physically abused defendant on the night of the incident"); *State v. Larson*, 473 N.W.2d 907, 908, 910 (Minn. App. 1991) (affirming the district court's decision to grant a dispositional departure on the basis that the victim was the initial aggressor because earlier the same day "he hit and threatened respondent"); *State v. Hougen*, No. C2-96-144, 1997 WL 3608, at *1-2 (Minn. App. Jan. 7, 1997) (affirming the district court's decision to impose a downward departure for circumstances involving a fight where the defendant was not initially involved).

The state next argues the district court abused its discretion when it granted the downward durational departure based upon Gutierrez's remorse.[3] Again, as noted above, "a single mitigating factor, standing alone, may justify a downward durational departure." *Solberg*, 882 N.W.2d at 624-25; *see also Malone*, 2018 WL 1040763, at *4. As such, even if the district court did err in its analysis of Gutierrez's remorse, for the reasons set forth

---

[3] We note that the district court did not cite remorse as a basis for the departure in the departure report.

above, the decision to grant a downward durational departure remains supported by the record.

Nevertheless, we again conclude that the district court did not abuse its discretion when it relied on its factual findings with respect to Gutierrez's remorse. Remorse may justify a downward durational departure if it "is directly related to the criminal conduct at issue and made that conduct significantly less serious than the typical conduct underlying the offense of conviction." *Solberg*, 882 N.W.2d at 626. Here, the district court's finding on remorse related to Gutierrez's conduct at the time of the offense. The district court found that after shooting victim, Gutierrez "did not run from law enforcement," was "cooperative," and "call[ed] 911." These findings are well supported by the record, which shows that Gutierrez "felt terrible" in the immediate aftermath of the shooting. He called 911 to report that someone had been shot and waited at the scene "to make sure [victim] got . . . aid." This immediate showing of remorse and acceptance of responsibility is directly related to Gutierrez's conduct in this case. *Id.* (allowing consideration of a defendant's remorse when it "bears on a determination of the . . . seriousness of the conduct on which the conviction was based"); *see also Daniliuk*, 2021 WL 4059657, at *4 (affirming a downward durational departure based, in part, on remorse where, "[a]fter causing the accident, Daniliuk got out of the car and expressed remorse through an apology to one of the victims at the scene of the accident"); *State v. Steurer*, No. A17-1737, 2018 WL 5316198, at *6 (Minn. App. Oct. 29, 2018) (affirming an upward durational departure based on lack of remorse where the defendant "did not help [the victim] by trying to stop

14

the bleeding or calling 911"), *rev. denied* (Minn. Jan. 15, 2019). Therefore, the district court did not abuse its discretion.

Finally, the state contends that the district court abused its discretion in the length of the departure ordered. But the Minnesota Sentencing Guidelines recognize that "[a] departure is . . . an exercise of judicial discretion." Minn. Sent'g Guidelines 2.D.1. And we are not aware of any case wherein we have determined that the district court had an adequate basis for a downward durational departure but reversed for the imposition of a longer prison term. We also note that the district court's imposition of a 60-month prison term appears to reflect its consideration of Gutierrez's request for a 48-month prison term. We therefore conclude that, in this case, the downward durational departure granted was not an abuse of the district court's broad discretion. *See, e.g.*, *State v. Martinson*, 671 N.W.2d 887, 891-93 (Minn. App. 2003) (rejecting the state's argument that the district court abused its discretion by departing from a presumptive 150-month prison term to a 75-month prison term for second-degree murder after concluding the crime was significantly less serious because "Martinson had a mental illness before, during, and after the incident"), *rev. denied* (Minn. Jan. 20, 2004); *State v. Weaver*, No. A17-1993, 2018 WL 6442166, at *2, *6 (Minn. App. Dec. 10, 2018) (rejecting the state's argument that the district court abused its discretion by departing from a presumptive range of 100-to-140 months to 48 months in part because "the sentencing guidelines recognize that a departure is an exercise of judicial discretion" (quotation omitted)).

In conclusion, we are "extremely deferential" to a district court's decision whether to impose a departure, *Dillon v. State*, 781 N.W.2d 588, 595-96 (Minn. App. 2010), *rev.*

*denied* (Minn. July 20, 2010), "and we cannot simply substitute our judgment for that of the [district] court," *Spain*, 590 N.W.2d at 88. "[A]s long as the record shows the [district] court carefully evaluated all the testimony and information presented before making a determination," we do not interfere with the district court's decision. *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011) (quotation omitted). Here, the district court provided legally supported reasons for the departure, carefully examined all the information presented, and conducted an independent inquiry into typical second-degree unintentional felony-murder offenses before reaching its decision. Under these circumstances, regardless of whether we would have reached the same decision, we cannot conclude the district court abused its broad discretion.

**Affirmed.**

**LARKIN,** Judge (dissenting)

I respectfully dissent. Because the district court's departure reasons are improper or inadequate, because my review of the record does not reveal alternative grounds to support the departure, and because in my judgment, the sanction imposed is not proportional to the severity of the offense as mitigated by the circumstances, I would reverse and remand for imposition of a presumptive sentence.

*Minnesota's Guidelines Sentencing System*

The Minnesota Sentencing Guidelines establish presumptive sentences for felony offenses and seek to "maintain uniformity, proportionality, rationality, and predictability in sentencing." Minn. Stat. § 244.09, subd. 5 (2022). "Underlying the Guidelines is the notion that the purposes of the law will not be served if judges fail to follow the Guidelines in the 'general' case." *State v. Garcia*, 302 N.W.2d 643, 647 (Minn. 1981) (*overruled on other grounds by State v. Givens*, 544 N.W.2d 774 (Minn. 1996). "Consequently, departures from the guidelines are discouraged and are intended to apply to a small number of cases." *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016).

"[D]epartures are justified only in exceptional cases." *Id.* at 625. A district court may depart from the presumptive sentence only if there are "identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent'g Guidelines 2.D.1 (Supp. 2023). The sentencing guidelines contain a list of recognized departure reasons that "are intended to apply to a small number of cases." *State v. Misquadace*, 644 N.W.2d 65, 68 (Minn. 2002).

A district court has broad discretion to depart from a presumptive sentence so long as substantial and compelling circumstances are present, and we generally will not interfere with an exercise of that discretion. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981). However, "[t]he use of an abuse-of-discretion standard in our review of sentencing decisions, while deferential, is not a limitless grant of power to the [district] court." *State v. Soto*, 855 N.W.2d 303, 312 (Minn. 2014) (quotation omitted).

If a departure is granted, the district court must provide written reasons, which specify "the particular substantial and compelling circumstances that make the departure more appropriate than the presumptive sentence." Minn. Sent'g Guidelines 2.D.1.c (Supp. 2023). "When the district court gives improper or inadequate reasons for a *downward* departure, we may scrutinize the record to determine whether alternative grounds support the departure." *Solberg*, 882 N.W.2d at 623. "Reversal is required when the reasons given are improper or inadequate and the record contains insufficient evidence to justify the departure." *State v. Rund*, 896 N.W.2d 527, 533 (Minn. 2017).

*The Presumptive Sentence Range and Departure Grounds*

The presumptive sentence for Gutierrez's conviction of second-degree felony murder is 150 months in prison, with a permissible sentence range of 128 to 180 months in prison. Minn. Sent'g. Guidelines 4.A (Supp. 2023). As support for its durational departure and imposition of a sentence of only 60 months, the district court endorsed two reasons on its departure report: (1) "[v]ictim was aggressor in incident" and (2) "[c]rime less onerous than usual." In addition, the district court made several statements on the record identifying the circumstances that influenced its decision to depart. For example, the district court

noted that the offense involved "a bunch of stupid boys that don't have fully developed brains" and "a bunch of undeveloped brains, hormones, just engaging in the most stupid situation." At the initial sentencing hearing, the district court judge told Gutierrez, "I don't want to send you to prison because, you know, that's not going to bring anybody back" and "I do see remorse." At the continued sentencing hearing, the district court judge told Guiterrez, "in my heart I don't want to send you to prison."

In granting the durational departure, the district court stated the following reasons on the record: "offender playing a minor or passive role; victim being the aggressor in the incident; or a crime less onerous than usual." The district court noted that it had reviewed all of the local cases in which a defendant had been sentenced to second-degree unintentional murder and that "in all of the cases, the defendant was the one who brought the weapon specifically to confront the victim." The district court said that this case was less "onerous" than those cases.

The district court explained that Gutierrez "in no way planned to shoot" the victim, that his brother "introduced the gun to the situation," and that the victim "himself started the entire situation." The district court also explained that the victim's passenger "decided to join the fray" as the victim and Gutierrez's brother fought, "rather than just letting this be a one-on-one fight," which caused Gutierrez "to make that horrible decision to run to his brother's defense with the loaded gun." The district court further explained that Gutierrez did not run from law enforcement, was cooperative, and even called or attempted to call 911 from the scene. Finally, the district court explained that even though the case had gone to trial, Gutierrez accepted responsibility for the role he played in the victim's

death and had shown remorse. The court concluded, "[s]o with all of that I do believe a durational departure from the guidelines is warranted."

The state argues that the reasons cited by the district court do not justify a downward durational departure. For the reasons that follow, I agree.

*Significantly Less Serious*

Over 40 years ago, the supreme court stated: "The general issue that faces a sentencing court in deciding whether to depart durationally is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question." *State v. Cox*, 343 N.W.2d 641, 643 (Minn. 1984).

> Just as an upward durational departure is justified if the defendant's conduct is significantly more serious than that typically associated with the commission of the offense, a downward durational departure is justified if the defendant's conduct is significantly less serious than that typically involved in the commission of the offense.

*State v. Mattson*, 376 N.W.2d 413, 415 (Minn. 1985). The supreme court has not abandoned the "seriousness of the offense" as the primary consideration when reviewing a durational departure. *See Solberg*, 882 N.W.2d at 624 ("A downward durational departure is justified only if the defendant's conduct was *significantly less serious* than that typically involved in the commission of the offense." (emphasis added) (quotation omitted)).

Here, the district court did not address whether the offense was "significantly less serious." *Id.* (quotation omitted). Instead, the district court addressed whether the offense was less "onerous." In the district court's defense, the standard departure report form provided by the Minnesota Sentencing Guidelines Commission lists "[c]rime less onerous

D-4

than usual" as a reason frequently used as a mitigating factor. *Departure Report Form*, Minn. Sent'g Guidelines Comm'n (2022). **[https://perma.cc/6ALT-JZSC]**. And as the majority notes, nonprecedential decisions of this court have not questioned the distinction between "onerous" and "serious" when reviewing departures.

To the extent that the district court—and our nonprecedential caselaw—equates "onerous" with "serious," the district court's description of the offense indicates that Gutierrez's conduct was *more* serious than a typical second-degree felony murder. For example, at the initial sentencing hearing, the district court noted that the offense "happened at 2:30 in the afternoon on a Saturday" and that "many people from our community . . . were traumatized by what they saw that day." The court recognized that "a young man lost his life" and that he was "a father, a son, a brother." At the continued sentencing hearing, the district court again noted that "this was something that has affected the community. It was in broad daylight, an afternoon on a nice Saturday with lots of people around." Moreover, as the state argued, Gutierrez killed the victim in front of his sister and his mother.

"An offense may be more serious than a typical crime when a large number of people are placed at risk or more people are put in fear than in the typical case." *State v. Fleming*, 869 N.W.2d 319, 326 (Minn. App. 2015), *aff'd*, 883 N.W.2d 790 (Minn. 2016). The supreme court has "repeatedly held that the risk to bystanders is an appropriate factor for courts to consider when determining the seriousness of a crime." *State v. Edwards*, 774 N.W.2d 596, 607 (Minn. 2009). Given the location, the time of day, and the presence of

the victim's relatives and bystanders, Gutierrez's offense was more serious, and not significantly less serious.

*Minor or Passive Role*

The district court noted that the nonexclusive list of permissible departure factors in the sentencing guidelines includes that the offender played a minor or passive role. Minn. Sent'g Guidelines 2.D.3.a.(2) (Supp. 2023). The district court stated that "[i]t was [Gutierrez's] brother who had the permit to carry and introduced the gun to the situation," that "there were actions of others that played roles in this tragedy," and that the victim "himself started the entire situation when instead of patiently waiting for 30 seconds for [Gutierrez's brother] to park, rolled down his window, yelled profanities, and ordered [him] to pull forward so they could fight." The court continued this line of reasoning noting that Gutierrez's brother "did just that, rather than just leaving the parking lot" and that the victim's passenger, "rather than just letting this be a one-on-one fight, decided to join the fray, causing [Gutierrez] to make that horrible decision to run to his brother's defense with the loaded gun."

My assessment of whether the district court erred in relying on the minor-or-passive role factor is influenced by supreme court caselaw. In *State v. Carson*, 320 N.W.2d 432, 438 (Minn. 1982), the supreme court upheld a downward durational departure based on the offender's minor or passive role. In that case, the defendant was one of two women who robbed a drug store. *Carson*, 320 N.W.2d at 434. One woman carried a gun and struck a pharmacist on the head, while the other woman, Carson, "was more passive." *Id.* The supreme court affirmed the district court's downward durational departure for Carson. *Id.*

at 438. And in *State v. Stempfley*, the supreme court noted that its analysis in *Carson*, as well as "the common-sense meaning of minor and passive, show that whether a defendant's role in an offense was minor or passive depends on a comparison of the defendant's conduct to the conduct of other participants in the crime." 900 N.W.2d 412, 418 (Minn. 2017) (quotations omitted).

The minor-or-passive-role factor does not favor Gutierrez. Although Gutierrez's brother introduced a gun into his verbal dispute with the victim, he returned the gun to his vehicle and elected to fight the victim unarmed. And there is no indication that the victim or his passenger were armed. Gutierrez was the one who elected to join the fight armed with a firearm and to use that firearm as a striking weapon. And Gutierrez's use of that firearm was the sole cause of the victim's death. His role was not minor or passive.

In addition, the district court reasoned that Gutierrez "did a ridiculously stupid thing. [He] handled a loaded firearm without having the experience or knowledge, and that act caused the death of another human being." The district court minimized Gutierrez's actions. He did not merely "handle" the firearm. He took possession of the firearm intending to use it as a striking weapon against the victim and his passenger. The district court noted that in the local cases it had reviewed and distinguished as more serious, "the defendant was the one who brought the weapon specifically to confront the victim." That is precisely what Gutierrez did. He may not have brought the gun to the crime scene, but he removed gun from the vehicle "specifically to confront" the victim and his passenger.

The record simply does not support a finding that Gutierrez played a minor or passive role in the crime.

*Victim as Aggressor*

The guidelines' list of permissive mitigating factors includes that "[t]he victim was an aggressor in the incident." Minn. Sent'g Guidelines 2.D.3(a)(1) (Supp. 2023). The district court relied on that factor, noting that the victim "himself started the entire situation." The district court is correct: the victim began the "situation" by honking his horn, swearing at Gutierrez's brother, and challenging him to a fight. But Gutierrez's brother is the one who escalated the confrontation. The trial evidence shows that Gutierrez's brother brandished a firearm and "cocked" it. After the victim's mother pleaded with him to put the gun away, Gutierrez's brother returned to his truck and placed the gun inside the vehicle. But Gutierrez's brother yelled that he "still want[ed] a piece of [the victim]," approached the victim, and punched the victim. A physical fight ensued, and the victim's passenger joined to assist the victim. Gutierrez's brother fought the victim and passenger for several seconds. No weapons were involved and all participants in the fight remained standing. In sum, although the victim was not entirely blameless, Gutierrez's brother was the one who approached the victim with a gun and then threw the first punch.

Caselaw addressing the "victim aggression" factor is sparse. In *State v. Larson*, this court concluded that "victim aggression" was a substantial mitigating factor that justified a mitigated dispositional departure. 473 N.W.2d 907, 910 (Minn. App. 1991). In that case, the victim picked a fight with the defendant "by spitting on him and punching him in the face." *Id.* at 908. The defendant "did not escalate the fight; he shook [the victim's] hand

and said everything was 'cool.'" *Id.* "As they parted company, [the victim] threatened to kill [the defendant] and his friends if he got his hands on them." *Id.*

The victim's actions in this case—honking his horn, swearing, and challenging another driver to a fight while both men were seated in separate vehicles—do not compare to the aggression in *Larson*. And I am not aware of any precedent suggesting that a verbal exchange of threats alone is sufficient to justify application of the victim-aggression mitigating-departure factor. I therefore cannot agree that the victim's conduct in this case constituted substantial and compelling aggression that made Guiterrez's offense significantly less serious.

*Offender-Related Reasons*

There is a long-standing rule that "[d]urational departures may be justified by offense-related reasons only." *Rund*, 896 N.W.2d at 533. In *Rund*, the supreme court explained:

> Offender-related reasons—such as particular amenability to probation or treatment, remorse that does not reduce the seriousness of the offense, or age—are not legally permissible reasons for a downward durational departure. Here, the district court relied on both offender- and offense-related reasons. The offender-related reasons were Rund's age, his remorse and acceptance of responsibility, his lack of substantial capacity for judgment, and his particular amenability to probation and treatment. *Because these are not legally permissible reasons for a downward durational departure, the district court's reliance on these reasons was an abuse of discretion.*

*Id.* (emphasis added) (footnote omitted) (citations omitted).

Rund was convicted of terroristic threats "in connection with a series of threatening tweets directed at law enforcement officers." *Id.* at 529. In granting the downward durational departure—which the supreme court reversed—the district court said: "The only reason this is less onerous is because of your age and of your mental state." *Id.* at 531 (emphasis omitted). The district court in *Rund* explained:

> Basically, young and dumb. Pretty good kid who did a bad thing, and you affected a lot of people, but you got a lot of promise in your life, too. Okay. That's what I see when I shake it all up. That's really why the Court is doing what I am doing.

*Id.* at 532. Like the district court in *Rund*, the district court here relied on appellant's young age and lack of intelligence, noting that Gutierrez was a "stupid boy[]" with an "undeveloped brain[]," who engaged in "the most stupid situation." Under *Rund*, the downward durational departure cannot be supported by offender-related factors such as Gutierrez's age or poor judgment.

The district court also noted that Gutierrez had "no criminal history" and "had been a responsible hard-working member of our community." But a "[d]efendant's clean record could not be a factor in justifying departure because that factor, in the form of defendant's criminal history score of zero, was already taken into account by the Guidelines in establishing the presumptive sentence." *State v. Cizl*, 304 N.W.2d 632, 634 (Minn. 1981). In addition, the guidelines provide that employment factors "should not be used as reasons for departure." Minn. Sent'g Guidelines 2.D.2.c (Supp. 2023). In short, the district court inappropriately relied on offender-related factors as reasons for its downward durational departure. *See State v. Peter*, 825 N.W.2d 126, 131 (Minn. App. 2012) ("For the reasons

just discussed, those additional characteristics of [defendant's] relative youth, his family support, his lack of a prior felony record, and his ability to obtain meaningful employment and education are not bases on which the district court could rest its downward durational departure."), *rev. denied* (Minn. Feb. 27, 2013).

*Lack of Intent*

The district court mentioned several times that Gutierrez did not intend for the underlying crime to occur. At the initial sentencing hearing, the district court stated: "I have no doubt, Mr. Gutierrez, that you did not intend what happened to happen." And at the continued sentencing hearing, the district court said, "Gutierrez in no way planned to shoot" the victim on the day of the offense, "[h]e was just going to Chick-fil-A for lunch." I understand the district court's statements to mean that Gutierrez did not intend to commit any crime that day, and not that Gutierrez did not intend to kill the victim (i.e., an element of the offense). *See State v. Jones*, 745 N.W.2d 845, 849 (Minn. 2008) ("Among the boundaries identified for proper departure is that the reasons used for departing must not themselves be elements of the underlying crime." (quotation omitted)).

The fact that an offender did not initially intend to commit a particular crime is not a valid reason for a downward durational departure. *See State v. Dentz*, 919 N.W.2d 97, 102 (Minn. App. 2018). In *Dentz*, we reversed the district court's grant of a downward durational sentencing departure for a conviction of soliciting a minor to engage in prostitution. *Id.* at 99. In granting the departure, the district court relied on Dentz's mental state and commented on his initial intent to solicit an adult rather than a minor to engage in prostitution. *Id.* at 101. The district court stated: "[B]asically [Dentz] solicited for what

[he] thought was going to be consensual sex with an adult woman . . . and the person on the other end then interjected . . . by the way, I'm 15 . . . . That's not the same thing for me as [Dentz] actively soliciting an underage female." *Id.* at 100. We rejected that reasoning stating, "the crime is not what he intended to do, it is what he actually did." *Id.* at 102.

Here, the crime is what Gutierrez actually did. *See id.* The fact that he did not intend to commit any crime when he went to Chick-fil-A for lunch does not change the fact that he unintentionally murdered the victim, nor does it make that crime significantly less serious.

*Remorse*

The district court noted that Gutierrez "accepted responsibility for the role [he] played, and [he] expressed and show[ed] remorse." But "[u]nless a defendant can show that his demonstrated remorse is directly related to the criminal conduct at issue and made that conduct significantly less serious than the typical conduct underlying the offense of conviction, remorse cannot justify a downward *durational* departure." *Solberg*, 882 N.W.2d at 626.

During his trial testimony, Gutierrez admitted that he hit the victim with the firearm, that he unintentionally fired it, and that he shot and killed the victim. He testified that he "felt terrible" that the victim was shot. We have no reason to doubt that Gutierrez felt remorse. Indeed, Gutierrez demonstrated remorse by calling or attempting to call 911 to obtain assistance for the victim and by remaining on the scene to cooperate with the ensuing

investigation. But the question is whether that remorse made the crime significantly less serious. The supreme court has stated:

> [S]howing the relevance of remorse to a durational departure will not be an easy task: a durational departure may be granted only if a defendant's remorse—or lack of remorse—bears on a determination of the cruelty or seriousness of the conduct on which the conviction was based. In other words, unless a defendant can show that his demonstrated remorse is directly related to the criminal conduct at issue and made that conduct significantly less serious than the typical conduct underlying the offense of conviction, remorse cannot justify a downward *durational* departure.

*Id.* (citation omitted). The *Solberg* court concluded:

> Even crediting Solberg's expressions of regret as genuine . . . . *Solberg did not engage in any remorse-driven conduct that lessened the impact of the crime on the victim or made his crime any less serious* than other third-degree criminal sexual assaults accomplished by coercion.

*Id.* (emphasis added); *see Rund*, 896 N.W.2d at 535 (reversing grant of downward durational departure in part because the record did not reflect any remorse that "lessen[ed] the impact of the crime on the victims or ma[d]e his terroristic threats any less serious than the typical terroristic-threats offense").

Despite Gutierrez's expression of remorse and his actions consistent with that remorse, the district court did not find, and my review of the record does not show, that his remorse-driven conduct "lessened the impact of the crime on the victim" or made the crime "less serious." *Solberg*, 882 N.W.2d at 626.

D-13

*Collective, Collegial Experience*

In the final analysis, I have considered whether Guiterrez's offense is significantly less serious than that typically involved in the commission of second-degree felony murder by relying on my "collective, collegial experience in reviewing a large number of criminal appeals." *See Mattson*, 376 N.W.2d at 415 ("On the basis of our collective, collegial experience in reviewing a large number of criminal appeals, we are satisfied that the defendant's conduct, although serious, was significantly less serious than that typically involved in the commission of the offense of criminal sexual conduct in the second degree." (quotation and citation omitted)).

I am aware of only one appellate case in which the district court's *grant* of a downward durational departure in a second-degree felony murder case was challenged and affirmed: *State v. Martinson*, 671 N.W.2d 887 (Minn. App. 2003), *rev. denied* (Minn. Jan. 20, 2004). In that case, the district court found Martinson guilty of second-degree felony murder and sentenced him to a downward durational departure of 75 months in prison instead of the presumptive sentence of 150 months. *Martinson*, 671 N.W.2d at 889, 891. On appeal to this court, we noted that the guidelines provide that if "the offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed," that impairment may be a mitigating factor supporting a downward departure. *Id.* at 891 (quotation omitted); *see* Minn. Sent'g Guidelines 2.D.3.a.(3) (Supp. 2023). We affirmed the downward durational departure in *Martinson* because it was undisputed that the defendant suffered from "the psychosis of paranoid schizophrenia" before, during, and after his commission of second-degree felony murder,

which was a substantial and compelling factor that justified a downward durational departure. *Martinson*, 671 N.W.2d at 892.

Here, there is no claim that Gutierrez suffered from a comparable mental illness. And based on my collective, collegial experience in reviewing a large number of criminal appeals, I am not satisfied that Gutierrez's conduct was *significantly* less serious than that typically involved in the commission of the offense of second-degree felony murder.

*Length of the Departure*

The state argues that "[e]ven if a stated reason to depart is affirmed, the appellate court must also decide if the length of the departure was within the district court's discretion." The state notes that "there is a complete absence of analysis on why [the stated departure grounds] justified a sentence that was approximately 100-200 months shorter" than the local cases on which the district court relied for comparative purposes. Finally, the state argues that the 60-month prison sentence "disregards the significant harm" that Gutierrez caused.

The guidelines state that "[a] departure is not controlled by the Guidelines, but rather, is an exercise of judicial discretion constrained by statute or case law." Minn. Sent'g Guidelines 2.D.1 (Supp. 2023). As to the permissive length of a departure, the supreme court has stated that when a departure is justified, "the extent of the departure should be limited to that justified by the reason for departure." *State v. Schantzen*, 308 N.W.2d 484, 487 (Minn. 1981). The supreme court explained:

> We are unable at this time to establish or articulate a standard
> by which to measure the sanction that should be imposed in
> those situations in which a departure from the guidelines'

presumptive sentence is proper. We must leave the problem to the [district] court and modify any sanction imposed only when we, after consideration of the total record, have a strong feeling that the sanction imposed exceeds or is less than that proportional to the severity of the offense of conviction and the extent of the offender's criminal history as aggravated or mitigated by the circumstances of the offense and that the trial judge exceeded his discretion in assessing the sanction.

*Id.* (footnote omitted) (quotation omitted).

Here, in addition to concluding that the departure grounds on which the district court relied were either impermissible, inadequate, or insufficiently supported by the record, I have a "strong feeling" that the sanction imposed is not proportional to the severity of the offense as mitigated by the circumstances and that, therefore, the district court exceeded its discretion by reducing Gutierrez's sentence to only 60 months. *Id.* In reaching that conclusion, I consider only sentences for second-degree felony murder,[4] and I am influenced by our decision in *Martinson*. Again, in that case we affirmed a durational departure from 150 months to 75 months for a second-degree felony murder conviction because it was undisputed that the defendant suffered from "the psychosis of paranoid schizophrenia" before, during, and after his commission of the offense. *Martinson*, 671 N.W.2d at 891-92. Assuming for the sake of argument that a downward durational

---

[4] Although we affirmed a departure from a presumptive range of 100-140 months to 48 months in *State v. Weaver*, that sentence was for promoting prostitution, and not for murder. No. A17-1993, 2018 WL 6442166, at *1-3, 6 (Minn. App. Dec. 10, 2018). In addition, the *Weaver* majority reasoned that if the defendant "had had zero, rather than four, criminal-history points, the presumptive guidelines sentence for his offense would have been 48 months, the sentence that he received" and that the sentence therefore fell "within the range generally contemplated for such an offense." *Id.* at *6. Those are not the circumstances here.

departure was warranted in this case, I fail to discern why Guiterrez was entitled to a greater departure than the actively-psychotic defendant in *Martinson*.

In sum, the district court abused its discretion both in deciding to depart and in selecting the length of the departure.

*Conclusion*

"In sentencing, district courts have a great deal of discretion. Rarely do we hold that it has been abused. But rarely is not never." *Soto*, 855 N.W.2d at 305. In the final analysis, "an abuse-of-discretion standard in our review of sentencing decisions, while deferential, is not a limitless grant of power to the [district] court." *See id.* at 312 (quotation omitted). We should not hesitate to closely examine whether the district court's departure reasons meet the substantial and compelling standard necessary to justify a departure because "[t]he sentencing guidelines lose all meaning" if the district courts do not adhere to that standard when granting a departure. *State v. Leja*, 684 N.W.2d 442, 450 (Minn. 2004).

I conclude that the district court failed to adhere to the substantial and compelling standard and that this is a rare case in which the district court abused its sentencing discretion. Because the district court's departure reasons are either legally impermissible, inadequate, or insufficiently supported by the record, and because our deference to the district court's sentencing discretion is not unlimited, I would reverse and remand for imposition of a presumptive sentence.